1  JEFFREY J. ZUBER (SBN 220830)
    *jzuber@zuberlawler.com*
2  TOMAS A. ORTIZ (SBN 188873)
    *tortiz@zuberlawler.com*
3  J. RAZA LAWRENCE (SBN 233771)
    *rlawrence@zuberlawler.com*
4  **ZUBER LAWLER LLP**
   350 S. Grand Avenue, 32nd Floor
5  Los Angeles, California 90071 USA
   Telephone: +1 (213) 596-5620
6  Facsimile: +1 (213) 596-5621

7  Attorneys for Defendant Salesforce, Inc.

8

9              **UNITED STATES DISTRICT COURT**

10   **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

11

12  | DR. LISBETH W. ROY, a Florida resident; | Case No. 3:24-cv-01219-JD |
    SINGLETON SURGICAL INSTITUTE, LLC,
13  a Georgia limited liability company; NET     **DEFENDANT SALESFORCE, INC's**
    RETAILERS, LLC, an Illinois limited liability  **NOTICE OF MOTION AND MOTION TO**
14  company; and MEDALLION FINANCIAL          **DISMISS PLAINTIFF'S FIRST**
    GROUP, a Maryland corporation,            **AMENDED COMPLAINT PURSUANT**
15                                            **TO RULE 12(B)(6); MEMORANDUM OF**
                         Plaintiff,           **POINTS AND AUTHORITIES**
16
             v.
17                                            Judge:    Hon. James Donato
    SALESFORCE, INC., a Delaware corporation  Date:     February 13, 2025
18  and Does 1-5,                             Time:     10:00 a.m.
                                              Crtrm.:   11
19                       Defendants.

20

21  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22          **PLEASE TAKE NOTICE** that on February 13, 2025, at 10:00 a.m., or as soon thereafter

23  as the matter may be heard, in the courtroom of the Honorable James Donato, located in the United

24  States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Salesforce, Inc.

25  will and hereby does move this Court to dismiss Plaintiffs' First Amended Complaint pursuant to

26  Federal Rule of Civil Procedure 12(b)(6).

27          This motion is made on the grounds that the First Amended Complaint fails to state a claim

28  upon which relief can be granted. Specifically:

1.  Dr. Roy lacks standing to bring claims individually as she is not a party to the Master Subscription Agreement.

2.  The First Amended Complaint fails to allege sufficient facts to support claims for violation of California Civil Code § 1671, unconscionability, false advertising, breach of the implied covenant of good faith and fair dealing, and rescission.

3.  The claims are based on standard contractual provisions that are lawful, reasonable, and enforceable under California law.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing.

Dated:  January 8, 2025                              Respectfully submitted,

                                                    **ZUBER LAWLER LLP**
                                                    J. RAZA LAWRENCE
                                                    TOMAS A. ORTIZ
                                                    JEFFREY J. ZUBER


                                    By:     _____/s/ J. Raza Lawrence_____
                                            Attorneys for Defendant Salesforce, Inc.

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

3   I.    INTRODUCTION ..................................................................................................1

4   II.   FACTUAL BACKGROUND ................................................................................2

5   III.  LEGAL STANDARD ...........................................................................................3

6   IV.   ARGUMENT .........................................................................................................4

7         A.   Dr. Roy Lacks Standing to Assert Claims Arising from the MSA ............................4

8         B.   The MSA's Acceleration Clause is Valid Under California Civil Code §
9              1671 (Count 1) ...........................................................................................5

10             1.   The Acceleration Clause is Not a Liquidated Damage Clause. ...................6

11             2.   The Acceleration Clause is Presumptively Valid Under Section
               1671(b) ...............................................................................................6

12             3.   The MSA's Acceleration Clause is Reasonable as a Matter of Law .............7

13             4.   Plaintiffs Fail to Meet Their Burden Under Section 1671 ...........................8

14             5.   Plaintiffs' Allegations Undermine Any Claim of Unreasonableness.............9

15        C.   Plaintiffs Fail to Allege Unconscionability (Count 2) ............................................10

16             1.   Plaintiffs Fail to Allege Procedural Unconscionability...............................10

17             2.   Plaintiffs Also Fail to Allege Substantive Unconscionability.....................12

18             3.   The Commercial Context Defeats Any Unconscionability Claim ...............12

19        D.   Plaintiffs Fail to State a Claim for False Advertising (Count 3)............................13

20             1.   The Challenged Statements Are Classic Puffery ........................................13

21             2.   The Context Confirms That These Statements Are Mere Puffery ..............15

22             3.   Plaintiffs Fail to Specifically Plead Averments to Fraud Under Their
23             False  Advertising Count.......................................................................16

24        E.   Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good
               Faith and Fair Dealing (Count 4) ...........................................................17

25        F.   Plaintiffs Fail to State a Claim for Rescission (Count 5) .......................................18

26   V.   CONCLUSION ....................................................................................................20

27
28

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A&M Produce Co. v. FMC Corp.*,
    135 Cal. App. 3d 473, 489 (1982) .................................................................. 11

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541, 554-55 (N.D. Cal. 2019) ............................................. 13

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ............................................... 13

*Apex Compounding Pharmacy, LLC v. eFax Corporate*,
    No. 16-cv-5165, 2018 WL 2589096, at *11 (C.D. Cal. Apr. 26, 2018) .............................. 9

*Apodaca v. Whirlpool Corp.*,
    2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) ......................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662, 687 (2009) ............................................................................... 4

*Atari Corp. v. 3DO Co.*
    1994 WL 723601(N.D. Cal 1994) ................................................................. 15

*Baltazar v. Forever 21, Inc.*,
    62 Cal.4th 1237, 1245 (2016) ....................................................................... 11

*Bardin v. Daimlerchrysler Corp.*,
    136 Cal. App. 4th 1255, 1275 (2006) .......................................................... 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ............................................................................... 3

*Cal. Grocers Assn. v. Bank of America*,
    22 Cal. App. 4th 205, 215 (1994) ................................................................ 12

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
    2 Cal. 4th 342, 374 (1992) ............................................................................ 18

*Chapman v. Skype, Inc.*,
    220 Cal. App. 4th 217, 226 (2013) .............................................................. 16

*Cheslow v. Ghirardelli Chocolate Co.*,
    445 F.Supp.3d 8, 18 (N.D. Cal 2020) ......................................................... 15

*City of Santa Monica v. Stewart*,
    126 Cal. App. 4th 43, 59 (2005) ................................................................... 4

*Conlin v. Osborn*,
   161 Cal. 659, 664 (1911)................................................................................................ 19

*Consumer Advocs. v. Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351, 1361 (2003)........................................................................ 13, 15

*Cook v. Brewer*,
   637 F.3d 1002, 1004 (9th Cir. 2011)............................................................................. 3

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990)........................................................................................ 13

*Crofoot Lumber, Inc. v. Thompson*,
   163 Cal. App. 2d 324, 332-33 (1958) ........................................................................ 19

*Dole Food Co. v. Patrickson*,
   538 U.S. 468, 475 (2003) .............................................................................................. 5

*El Centro Mall, LLC v. Payless ShoeSource, Inc.*,
   174 Cal. App. 4th 58, 63 (2009) ................................................................................... 6

*Electronic Funds Solutions v. Murphy*,
   134 Cal. App. 4th 1161, 1179 (2005) ......................................................................... 10

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) ............................................................... 13

*Engalla v. Permanente Medical Group, Inc.*,
   15 Cal.4th 951, 974 (1997)......................................................................................... 17

*First Am. Commercial Bancorp., Inc. v. Vantari Genetics, LLC*,
   2:19-cv-04483-VAP-FFM, 2020 WL 5027990, at *4 (C.D. Cal. Mar. 12, 2020) ............... 8

*Foley v. Interactive Data Corp.*,
   47 Cal. 3d 654, 690 (1988) ......................................................................................... 12

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
   343 F3d 1000, 1005 (9th Cir. 2003)............................................................................ 15

*Gormley v. Gonzalez*,
   84 Cal. App. 5th 72, 81 (2022) ..................................................................................... 6

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807, 819-21 (1981) .................................................................................... 12

*Graylee v. Castro*,
   52 Cal. App. 5th 1107, 1114 (2020).............................................................................. 6

*Greater Houston Transp. Co. v. Uber Techs., Inc.*
   155 F. Supp.3d 670, 683 (S.D. Tex. 2015) ................................................................ 15

*Guz v. Bechtel Nat'l Inc.*,
   24 Cal. 4th 317, 349-50 (2000) .................................................................................. 17

*Hammon Plating Corp. v. Wooten*,
 No. 16-cv-3951-LHK, 2017 WL 4232329 (N.D. Cal. Sept. 25, 2017)................................ 8

*Harbor Island Holdings v. Kim*,
 107 Cal. App. 4th 790, 796 (2003) ...................................................................... 7

*Hayduk v. Lanna*,
 775 F.2d 441, 443 (1st Cir. 1985) ........................................................................ 16

*Hodges v. Apple Inc.*,
 2013 WL 4393545, at *3 (N.D. Cal. Aug. 12, 2013) ................................................ 14

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
 No. 22-cv-4109-TSH, 2023 WL 1768120, at *3 (N.D. Cal. Feb. 3, 2023)................... 3

*Imperial Casualty & Indemnity Co. v. Sogomonian*,
 198 Cal. App. 3d 169, 184 (1988) ........................................................................ 19

*In re 3Com Securities Litig.*,
 761 F.Supp. 1411, 1419 (N.D. Cal. 1990) ............................................................. 15

*In re Ford Motor Co. Sec. Litig., Class Action*
 381 F3d 563, 570-571 (6th Cir. 2004) .................................................................. 15

*In re General Motors LLC CP4 Fuel Pump Litig.*,
 393 F.Supp.3d 871, 877-878 (N.D. Cal 2019) ...................................................... 15

*In re Seagate Tech. LLC Litig.*,
 233 F.Supp.3d 776, 793-794 (N.D. Cal 2017) ...................................................... 15

*Irving Firemen's Relief & Retirement Fund v. Uber Technologies, Inc.*,
 998 F.3d 397, 403-04 (2021)................................................................................ 16

*Kasky v. Nike, Inc.*,
 27 Cal. 4th 939, 951(2002).................................................................................. 16

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120, 1125 (2009) ................................................................................. 16

*Koenig v. Warner Unified School District*,
 41 Cal.App.5th 43, 59 (2019) .............................................................................. 19

*Lhotka v. Geographic Expeditions, Inc.*,
 181 Cal. App. 4th 816, 824-25 (2010) ................................................................. 11

*Little v. Auto Stiegler, Inc.*,
 29 Cal. 4th 1064, 1071 (2003)............................................................................. 10

*McGuire v. More-Gas Investments, LLC*,
 220 Cal. App. 4th 512, 521-22 ............................................................................ 6

*Morris v. Redwood Empire Bancorp*,
 128 Cal. App. 4th 1305, 1320 (2005).................................................................... 11

*Moyer v. Amador Valley J. Union High School Dist.*,
    225 Cal. App. 3d 720, 725-26 (1990) ..................................................... 15

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133, 1139 (9th Cir. 2004) ...................................................... 5

*Oestreicher v. Alienware Corp.*,
    544 F. Supp.2d 964, 973 (N.D. Cal. 2008) ............................................. 14

*One-O-One Enters., Inc. v. Caruso*,
    848 F.2d 1283, 1286-87 (D.C. Cir. 1988) ............................................... 14

*O'Shea v. Littleton*,
    414 U.S. 488, 494 (1974) ......................................................................... 5

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111, 126-27 (2019) ................................................................. 11

*Paterno v. Sup. Ct.*,
    163 Cal. App. 4th 1342 (2008) ................................................................ 15

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251, 1261 (9th Cir. 2017) ...................................................... 11

*Powers v. Ohio*,
    499 U.S. 400, 410 (1991) ......................................................................... 5

*Purcell v. Schweitzer*,
    224 Cal. App. 4th 969, 974-75 (2014) ..................................................... 8

*Racine & Laramie, Ltd. v. Department of Parks & Recreation*,
    11 Cal. App. 4th 1026, 1032 (1992) ........................................................ 17

*Red & White Distribution, LLC v. Osteroid Enterprises, LLC*,
    2020 WL 5745328, at *5 (S.D. Cal. Sept. 25, 2020) .............................. 9

*Ridgley v. Topa Thrift & Loan Ass'n*,
    17 Cal. 4th 970, 977 (1998) ..................................................................... 7

*Semegen v. Weidner*,
    780 F.2d 727, 734–35 (9th Cir.1985) ................................................. 16, 19

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429, 439-40 (9th Cir. 1979) ..................................................... 5

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976, 981 (9th Cir. 2007) .......................................................... 10

*Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*,
    242 F. Supp. 302, 308-09 (N.D. Ill. 1965) ............................................. 14

*Sole Energy Co. v. Petrominerals Corp.*,
    128 Cal. App. 4th 212, 229 (2005) .......................................................... 4

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
    933 F.Supp. 918, 931(C.D. Cal. 1996) ........................................................................ 15

*Sybron Corp. v. Clark Hosp. Supply Corp.*,
    76 Cal. App. 3d 896 (1978) ........................................................................... 6, 8

*Third Story Music, Inc. v. Waits*,
    41 Cal. App. 4th 798, 808 (1995) ............................................................................. 17

*Vaughn v. Fey*,
    47 Cal. App. 485, 488-89 (1920) ............................................................................ 18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097, 1103 (9th Cir. 2003) ....................................................................... 16

*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.*,
    50 Cal. 4th 913, 928 (2010) .................................................................................... 18

*Wyler v.* Feuer
    85 Cal. App. 3d 392, 403-04 (1978) ....................................................................... 19


**<u>STATUTES</u>**

Cal. Civ. Code § 1671(b) ............................................................................................ 10

Cal. Civ. Code § 1689(b)(1-5) ..................................................................................... 18

California Business & Professions Code § 17500 ........................................................ 16

California Civil Code § 1671 ............................................................................... 5, 6, 19

California Civil Code § 1689 ....................................................................................... 18

California Civil Code § 1691(b)..................................................................................... 19

3910-1008 / 4114159.1

1 <u>**MEMORANDUM IN SUPPORT OF SALESFORCE'S MOTION**</u>

2 **I.    INTRODUCTION**

3    The First Amended Complaint ("FAC") seeks to void standard commercial agreements that

4 Plaintiffs voluntarily entered into after having full opportunity to review the terms. While adding

5 new parties and elaborating on certain allegations, the FAC fails to cure the fundamental defects

6 that were present in Plaintiffs' original complaint and doom their claims. At its core, this case

7 involves sophisticated business parties seeking to avoid their contractual obligations under a Master

8 Subscription Agreement ("MSA") that forms the foundation of their relationship with Salesforce.

9 Plaintiffs do not allege that Salesforce breached any provision of the MSA. Instead, they make

10 indirect attacks on the MSA's validity while acknowledging its terms were available for review

11 before contracting.

12    Plaintiffs – a medical clinic owner, a surgical training institute, an online retailer, and a

13 financial services firm – are sophisticated parties who contracted for Salesforce's enterprise

14 software services. They now seek to represent a class of Salesforce customers claiming they could

15 not terminate their subscription contracts without paying agreed-upon amounts. Plaintiffs'

16 allegations that Salesforce concealed implementation costs and enforced supposedly

17 unconscionable termination provisions are contradicted by their admissions about the availability

18 and clarity of contract terms. These terms are standard in enterprise software agreements, reflecting

19 legitimate business interests and ensuring predictability for both parties. Courts have consistently

20 upheld such provisions as essential to maintaining fair and predictable commercial practices in high-

21 value contracts.

22    Dr. Lisbeth Roy lacks standing because she signed solely as a corporate representative of

23 her medical practice, not in her individual capacity. The MSA defines the "Customer" as the

24 contracting entity and makes no provision for extending rights or obligations to its officers. This

25 distinction underscores the principle that corporate representatives act in a representative capacity

26 and cannot personally enforce contracts absent explicit inclusion as parties or intended beneficiaries.

27 The unconscionability claims fail because Plaintiffs' own allegations demonstrate they had ample

28 opportunity to review the MSA's terms before contracting. The acceleration provisions represent

valid liquidated damages, not unlawful penalties. The marketing statements challenged as false advertising constitute mere puffery. The attempt to void these sophisticated commercial agreements through rescission ignores both contractual reality and sound business practice. Plaintiffs' claims rest largely on their dissatisfaction with implementation costs that were expressly disclosed and their inability to terminate contracts without paying agreed-upon fees. Ultimately, these allegations amount to mere buyer's remorse and fail to establish any actionable claims under California law. For these reasons, the Court should dismiss the FAC in its entirety.

## II.   FACTUAL BACKGROUND

This dispute arises from subscription agreements between Salesforce and several business customers who allege they were unable to utilize Salesforce's services but were prevented from early termination. FAC ¶¶13-16. Dr. Roy alleges that on December 23, 2019, she signed an MSA with Salesforce for a one-year term at approximately $10,000 total cost. FAC ¶57. The Order Form was signed by Dr. Roy as CEO and "C-Level Executive" of Doctor's Studio. FAC ¶¶34-41. Dr. Roy alleges she was "shocked to learn it would cost tens of thousands of dollars (possibly $50,000-$100,000) in hidden Implementation Costs" beyond the subscription fee to receive any benefit from the services. FAC ¶59. Following the COVID-19 pandemic's onset, Dr. Roy notified Salesforce on May 24, 2020, that she wanted to cancel her subscription. FAC ¶63. After several communications, Salesforce declined to allow early termination, stating it had "significant difficulty cancelling any existing contracts that are in place." FAC ¶68. Dr. Roy demanded termination under California Civil Code Section 1511, which, according to Dr. Roy, Salesforce rejected. FAC ¶¶70-71.

Singleton Surgical Institute LLC contracted with Salesforce in 2021 for approximately $1,300-1,500 per year for CRM services to manage student data including grades, attendance records, and credentials. FAC ¶¶75-76. Singleton claims it subsequently discovered it would need to pay nearly $40,000 in implementation costs to utilize the services. FAC ¶¶77-78. When Singleton attempted to cancel its contract on March 9, 2024, stating it was "being overcharged" and "cannot access" its business account or data, Salesforce refused and continued monthly billing despite Singleton never receiving the expected benefits. FAC ¶81.

Net Retailers LLC entered into a five-year, $1.8 million subscription agreement in 2021 after

approximately twenty meetings with Salesforce representatives who assured implementation would take no more than six months. FAC ¶¶82-87. Net Retailers alleges Salesforce employed aggressive marketing tactics and made assurances about software capabilities during these meetings. FAC ¶¶83-85. After signing, Net Retailers learned implementation would take over a year and cost significantly more than represented. FAC ¶92. Despite attempts to resolve performance issues and requests to terminate, Salesforce refused cancellation. FAC ¶¶94-96. By November 2024, Net Retailers had spent over $1.2 million in licensing costs and $819,000 in implementation costs for services it claims provided no benefit, with $1.1 million still remaining on the contract. FAC ¶¶107-108.

Medallion Financial Group initially contracted for CRM services at $36,000 over three years and successfully implemented the base CRM product. FAC ¶¶111-112. When Medallion later expressed interest in expanding its platform, Salesforce persuaded it to add Mulesoft services, even after Medallion expressed concerns about broker-dealer approval requirements, budget constraints, and timing. FAC ¶¶113-114. After signing, Medallion discovered the Mulesoft implementation was not technically feasible and lacked required broker-dealer approval. FAC ¶117. When Medallion did not pay the Mulesoft invoices, Salesforce suspended Medallion's separate, paid-up CRM subscription, denying access to critical business data until Medallion paid the disputed Mulesoft charges. FAC ¶119.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss all or part of a complaint for failure to state a claim upon which relief can be granted. "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). To survive a motion to dismiss, "[a] complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.,* No. 22-cv-4109-TSH, 2023 WL 1768120, at *3 (N.D. Cal. Feb. 3, 2023) (Hixson, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court is required to accept factual allegations in the complaint as true, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare

1    recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*,

2    556 U.S. 662, 687 (2009). Conclusory allegations, unwarranted deductions of fact, or formulaic

3    recitations of the elements of a cause of action do not suffice. *Twombly*, 550 U.S. at 555.

4    **IV.    ARGUMENT**

5            **A.    Dr. Roy Lacks Standing to Assert Claims Arising from the MSA**

6            Dr. Roy lacks standing to assert claims arising from the MSA because she is not a party to

7    the agreement in her individual capacity. Standing derives from the principle that "[e]very action

8    must be prosecuted in the name of the real party in interest." *City of Santa Monica v. Stewart*, 126

9    Cal. App. 4th 43, 59 (2005). The real party in interest must have rights under the contract at issue.

10   Even if a corporate officer suffers indirect harm from a corporation's contract, that does not confer

11   standing to sue individually on the contract. *See Sole Energy Co. v. Petrominerals Corp.*, 128 Cal.

12   App. 4th 212, 229 (2005).

13          Salesforce entered into the MSA with Doctor's Studio, not Dr. Roy personally. The MSA

14   explicitly defines "Customer" as, "in the case of an individual accepting this Agreement on his or

15   her own behalf, such individual, or in the case of an individual accepting this Agreement on behalf

16   of a company or other legal entity, the company or other legal entity for which such individual is

17   accepting this Agreement, and Affiliates of that company or entity (for so long as they remain

18   Affiliates) which have entered into Order Forms." FAC ¶34, Ex. A. Dr. Roy signed the MSA solely

19   in her representative capacity as CEO of Doctor's Studio, representing herself as a "C-Level

20   Executive" of Doctor's Studio. FAC ¶¶34-41. While Dr. Roy alleges Doctor's Studio was her

21   "fictitious business" (FAC ¶13), this characterization is inconsistent with her own representations

22   when contracting with Salesforce. The Order Form and MSA clearly identify Doctor's Studio as the

23   contracting entity and "Customer," with Dr. Roy signing only in her corporate capacity as a

24   representative of Doctor's Studio. FAC ¶¶34, 57.

25          The definition of "Affiliate" in the MSA further demonstrates that Dr. Roy is not a

26   contracting party: "'Affiliate' means any entity that directly or indirectly controls, is controlled by,

27   or is under common control with the subject entity. 'Control,' for purposes of this definition, means

28   direct or indirect ownership or control of more than 50% of the voting interests of the subject entity."

FAC, Ex. A, Section 1. Dr. Roy does not qualify as either the "Customer" or an "Affiliate" under these definitions. She is neither the contracting party nor a third-party beneficiary. Rather, she is merely an officer who executed the agreement on behalf of Doctor's Studio.

Courts consistently hold that corporate officers or representatives cannot enforce contracts entered into by their corporations unless explicitly included as contracting parties or third-party beneficiaries. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004). Here, the MSA contains no provision extending contractual rights or obligations to officers, employees, or agents of the Customer. Because Dr. Roy is not a contracting party, she cannot assert claims for breach of contract, unconscionability, rescission, or related theories arising from the MSA. Ninth Circuit precedent confirms that corporate officers lack standing to assert personal claims under contracts signed solely in a representative capacity. *See Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir. 1979) (president and sole shareholder of corporation lacked standing to assert individual claims based on contracts with corporation). Allowing Dr. Roy to assert individual claims would improperly blur the distinction between corporate and individual capacity that is fundamental to corporate law. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (corporation and its owners/officers are distinct entities).

Dr. Roy's allegations about Doctor's Studio being her "fictitious business" (FAC ¶ 13) do not change this analysis, as the MSA's plain terms identify the corporate entity as the Customer. This standing defect is particularly significant given that Dr. Roy purports to represent a class of "individuals or corporate entities who signed an Order Form with Salesforce" (FAC ¶122). As she lacks individual standing, she cannot serve as a class representative. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (named plaintiffs must have individual standing to pursue claims on behalf of a class). This defect cannot be cured through amendment, as the fundamental nature of Dr. Roy's relationship to the contract - as a corporate representative rather than an individual party - cannot be changed retroactively. Accordingly, all claims brought by Dr. Roy individually should be dismissed.

**B.    The MSA's Acceleration Clause is Valid Under California Civil Code § 1671 (Count 1)**

Plaintiffs allege that the MSA's acceleration clause requiring payment of all remaining

1    **unpaid** amounts upon default—constitutes a liquidated damages clause and an unlawful penalty

2    under California Civil Code § 1671. This claim fails as a matter of law, as the clause (which is not

3    a liquidated damage provision) simply requires payment of amounts already owed under the

4    contract.

5             1.      The Acceleration Clause is Not a Liquidated Damage Clause.

6        The MSA's acceleration clause allows Salesforce, in the event of a default by the customer,

7    to "accelerate Customer's unpaid fee obligations under such agreements so that all such obligations

8    become immediately due and payable." FAC, Ex. A, ¶ 5.4. The provision is not a liquidated damage

9    clause. Under California law, similar provisions have been upheld as reasonable measures to ensure

10   payment of contractual obligations. *See Sybron Corp. v. Clark Hosp. Supply Corp.*, 76 Cal. App. 3d

11   896, 903 (1978). Liquidated damages are defined as a sum which a contracting party agrees to pay

12   for breach of a contractual obligation. *Graylee v. Castro,* 52 Cal. App. 5th 1107, 1114 (2020). The

13   purpose of a liquidated damages clause is to stipulate a pre-estimate of damages to provide certainty

14   regarding the extent of liability in the event of a breach or default. *McGuire v. More-Gas*

15   *Investments, LLC*, 220 Cal. App. 4th 512, 521-22; *El Centro Mall, LLC v. Payless ShoeSource, Inc.*,

16   174 Cal. App. 4th 58, 63 (2009). Here, the provision does not provide for payment of a fixed damage

17   amount as a remedy for a breach or default, but instead the provides for payment of unpaid amounts

18   the customer has already agreed to pay under the terms of the contract. Accordingly, the MSA's

19   acceleration clause is not subject to California Civil Code § 1671.

20            2.      The Acceleration Clause is Presumptively Valid Under Section 1671(b)

21        Alternatively, even under the circumstance where the acceleration clause is deemed a

22   liquidated damage provision, it remains presumptively valid as a matter of law. California Civil

23   Code § 1671(b) creates a strong presumption that liquidated damages provisions in commercial

24   contracts are valid "unless the party seeking to invalidate the provision establishes that the provision

25   was unreasonable under the circumstances existing at the time the contract was made." This

26   presumption applies broadly to all contracts except consumer contracts for "retail purchase or

27   rental...of personal property or services" or residential leases. *See Gormley v. Gonzalez*, 84 Cal.

28   App. 5th 72, 81 (2022). The burden of proving unreasonableness falls squarely on the party

1    challenging the provision. *Harbor Island Holdings v. Kim*, 107 Cal. App. 4th 790, 796 (2003);

2    *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998).

3        The contracts here fall within Section 1671(b)'s presumption of validity. Each plaintiff

4    entered into the MSA for commercial purposes: Dr. Roy contracted through her medical practice

5    Doctor's Studio (FAC ¶13); Singleton provided professional medical training services (FAC ¶74);

6    Net Retailers operated multiple online retail brands (FAC ¶82); and Medallion provided financial

7    planning services (FAC ¶111). None used the Salesforce services for personal, family, or household

8    purposes.

9        The FAC's complaints about implementation costs fundamentally misunderstand the nature

10   of the parties' agreement. While the MSA permits Salesforce to provide implementation services, it

11   does not require customers to purchase such services from Salesforce or any particular provider.

12   Customers may choose to engage either Salesforce or third-party implementation partners to

13   customize and configure the software for their specific needs, or may choose to implement the

14   software themselves. The FAC's attempt to hold Salesforce responsible for implementation costs -

15   whether charged by Salesforce or third parties - has no basis in the MSA or in law, as implementation

16   services are separate from the core subscription services and nothing in the MSA requires customers

17   to purchase them.

18           3.      The MSA's Acceleration Clause is Reasonable as a Matter of Law

19        The MSA's acceleration clause is reasonable because it (1) merely requires payment of

20   amounts the customer has already agreed to pay, (2) reflects Salesforce's substantial upfront costs

21   and ongoing obligations, and (3) ensures predictability in complex enterprise software contracts.

22   This provision ensures Salesforce recovers the costs of providing services, including ongoing

23   maintenance, technical support, and data hosting. The acceleration clause here reasonably forecasts

24   potential harm from breach by ensuring Salesforce recovers costs related to software maintenance,

25   data hosting, and technical support obligations. Similar acceleration clauses have been upheld where

26   they reflect actual amounts owed rather than penalties. *See Sybron Corp.*, 76 Cal. App. 3d at 903.

27   Under California law, an acceleration clause that "does nothing more than require the payment of

28   past due and future installments" is reasonable as a matter of law. *First Am. Commercial Bancorp.,*

1  *Inc. v. Vantari Genetics, LLC*, 2:19-cv-04483-VAP-FFM, 2020 WL 5027990, at *4 (C.D. Cal. Mar.

2  12, 2020). The clause represents "a fair average compensation for any loss that may be sustained."

3  *Vitatech*, 16 Cal. App. 5th 796, 805-06 (2017).

4         Here, the amount of damages is precisely the amount owed by the customer on the contract,

5  and so the accelerated damages provision is reasonable and enforceable. The MSA does not provide

6  for early termination of the agreement without cause. FAC, Ex. A at ¶ 11.2. The Order Form lists

7  the full price that Plaintiff agreed to pay for the full term of the contract, $10,080. FAC, Ex. A at

8  Order Form. The accelerated damages clause does nothing more than require a Plaintiff, if it did not

9  make a quarterly payment within 30 days of it being due, to pay all remaining amounts owed

10  immediately. Because an acceleration clause imposes an amount of damages that "bears … [a]

11  reasonable relationship to the range of actual damages that the parties could have anticipated would

12  flow from a breach," an acceleration clause in a non-consumer contract has been held valid as a

13  matter of law. *First Am.*, 2020 WL 5027990, at *4 (quoting *Vitatech*, 16 Cal. App. 5th at 805-06);

14  *see also Hammon Plating Corp. v. Wooten*, No. 16-cv-3951-LHK, 2017 WL 4232329, at *9 (N.D.

15  Cal. Sept. 25, 2017) (Koh, J.) (holding acceleration clause in promissory note valid under Cal. Civ.

16  Code § 1671(b)); *cf. Sybron Corp.*, 76 Cal. App. 3d at 903. Indeed, courts have consistently upheld

17  similar acceleration clauses in subscription and service agreements. *See McGuire*, 220 Cal. App.

18  4th at 523-24 (acceleration clause valid where it "does no more than require the payment of an

19  amount explicitly agreed upon by the parties").

20              4.       Plaintiffs Fail to Meet Their Burden Under Section 1671

21         The FAC contains no factual allegations that could overcome Section 1671(b)'s presumption

22  of validity. It offers only conclusory assertions that the acceleration clause "bears no reasonable

23  relationship to actual damages" and generalized complaints about Salesforce's market position. *See*

24  FAC ¶18 and 90. Such "threadbare recitals" cannot satisfy plaintiffs' burden. *Iqbal*, 556 U.S. at 687.

25         To overcome Section 1671(b)'s presumption of validity, Plaintiffs must allege specific facts

26  showing the acceleration clause was unreasonable when made. *See Purcell v. Schweitzer*, 224 Cal.

27  App. 4th 969, 974-75 (2014). The FAC falls far short of this requirement. Instead, it offers only

28  conclusory allegations that the clause "bears no reasonable relationship to actual damages" (FAC

1   ¶90), Salesforce has superior bargaining power (FAC ¶¶34, 90), and the provision is "harsh" and

2   "one-sided" (FAC ¶43)

3        These generic allegations are insufficient under *Iqbal* and *Twombly*. *See Apex Compounding*

4   *Pharmacy, LLC v. eFax Corporate*, No. 16-cv-5165, 2018 WL 2589096, at *11 (C.D. Cal. Apr. 26,

5   2018) (dismissing challenge to liquidated damages provision based on conclusory allegations); *Red*

6   *& White Distribution, LLC v. Osteroid Enterprises, LLC*, 2020 WL 5745328, at *5 (S.D. Cal. Sept.

7   25, 2020) (allegations of unequal bargaining power insufficient to invalidate liquidated damages).

8   Plaintiffs have thus failed to satisfy their burden of adequately pleading that the acceleration clause

9   is invalid.

10           5.        Plaintiffs' Allegations Undermine Any Claim of Unreasonableness

11       The FAC's detailed allegations about the parties, their negotiations, and the nature of

12  Salesforce's services demonstrate the commercial reasonableness of the acceleration clause. First,

13  the FAC establishes that Plaintiffs are sophisticated business entities capable of understanding and

14  negotiating commercial contracts. Dr. Roy operated a "reputable and rapidly growing medical clinic

15  and wellness center" providing specialized services for "longevity and regenerative health." FAC

16  ¶56. Singleton is a professional medical training company that has been providing "educational and

17  training services for individuals in the medical field" since 2017. FAC ¶74. Net Retailers, founded

18  in 2009, operates a sophisticated business selling "high-end furniture and home décor through four

19  distinct online brands" and had previously "developed its own CRM, Order Management software

20  and eCommerce websites." FAC ¶82. Medallion is a financial planning firm with sufficient

21  sophistication to require broker-dealer approval for technology implementations. FAC ¶¶111, 114.

22       The FAC acknowledges the substantial investment and ongoing obligations Salesforce

23  undertakes to provide its services. The allegations confirm that Salesforce must maintain complex

24  software platforms (FAC ¶4), provide services involving "robust data" management and integration

25  capabilities (FAC ¶76), and deliver ongoing technical support and maintenance (FAC ¶¶92-93).

26  The FAC, moreover, demonstrates Plaintiffs had ample opportunity to review and understand the

27  terms. The MSA was "available on an external Salesforce website" before signing (FAC ¶33), with

28  terms contained in a "standard non-negotiable preprinted MSA" that customers could review (FAC

¶33). Net Retailers even had "approximately twenty (20) different meetings" with Salesforce representatives before contracting. FAC ¶83. The Order Forms explicitly referenced the MSA terms. FAC ¶37.

Significantly, the accelerated amounts reflect actual services Salesforce must provide throughout the contract term. As the FAC acknowledges, Salesforce is "obligated to 'make the Services available'" for the entire subscription period (FAC ¶52), which requires maintaining complex software platforms (FAC ¶4), preserving customer "data across their systems" (FAC ¶76), and providing continuous updates and technical support (FAC ¶¶92-93).

The FAC's allegations thus demonstrate the acceleration clause was a reasonable provision in a sophisticated commercial transaction—not an unconscionable penalty. *See Electronic Funds Solutions v. Murphy*, 134 Cal. App. 4th 1161, 1179 (2005) (commercial context supports reasonableness); *Apex*, 2018 WL 2589096, at *11 (dismissing claim for unenforceability of provision under Cal. Civ. Code § 1671(b) where adhesion contract's limited liability provision had a reasonable relation to the amount of anticipated damages). Plaintiffs cannot satisfy their burden to plead the unreasonableness of the acceleration clause, so the count should be dismissed.

### C.    Plaintiffs Fail to Allege Unconscionability (Count 2)

"Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003). Substantive unconscionability focuses on "overly harsh" or "one-sided" results. *Id.* California courts apply a "sliding scale," meaning "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Shroyer*, 498 F.3d at 981-82.

1.    Plaintiffs Fail to Allege Procedural Unconscionability

Plaintiffs allege the MSA was a "take-it-or-leave-it" adhesion contract without pleading supporting facts. The mere fact that a contract is adhesive does not render it procedurally unconscionable. To establish procedural unconscionability, the FAC must allege facts showing

1    either "oppression" or "surprise." *Apex*, 2018 WL 2589096, at *9. The FAC fails on both counts.

2    The Ninth Circuit has emphasized that "the adhesive nature of a contract, without more,

3    would give rise to a low degree of procedural unconscionability at most." *Poublon v. C.H. Robinson*

4    *Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (citing *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1245

5    (2016)). As *Baltazar* emphasizes, any procedural unconscionability inherent in adhesion contracts

6    must be balanced against substantive fairness, and mere adhesion is insufficient to invalidate

7    contractual terms.

8    The existence of market alternatives, moreover, is highly relevant to this analysis. Here, the

9    FAC's own allegations demonstrate robust competition in the CRM market, with alternatives such

10    as Shopify and other providers readily available. FAC ¶83. The FAC acknowledges that Plaintiffs

11    evaluated multiple options, including Shopify, before contracting with Salesforce. Courts have

12    consistently held that the availability of market alternatives weighs heavily against procedural

13    unconscionability, particularly in commercial contexts. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126-

14    27 (2019) (market choice relevant to unconscionability analysis); *Lhotka v. Geographic*

15    *Expeditions, Inc.*, 181 Cal. App. 4th 816, 824-25 (2010) (same). Plaintiffs' own allegations that they

16    evaluated other providers, including Shopify, reinforce the existence of meaningful alternatives.

17    As to oppression, the FAC contains no allegation that Plaintiffs lacked "a meaningful choice

18    of reasonably available alternative sources" of CRM services. *Morris v. Redwood Empire Bancorp*,

19    128 Cal. App. 4th 1305, 1320 (2005). To the contrary, the FAC's allegations demonstrate Net

20    Retailers specifically "evaluated Salesforce's Commerce Cloud software solution and Shopify" with

21    "Shopify offering better pricing and terms." FAC ¶83. Net Retailers had even previously developed

22    its own CRM solution. FAC ¶82. The FAC also acknowledges Salesforce is just "number one"

23    among multiple CRM providers in the market. FAC ¶18. The other Plaintiffs similarly had choices

24    for CRM services. This is particularly significant given that Plaintiffs are sophisticated business

25    entities who regularly negotiate complex commercial agreements. Courts have consistently held that

26    such parties cannot claim procedural unconscionability merely because terms are non-negotiable.

27    *See A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 489 (1982).

28    As to surprise, the FAC's allegations demonstrate Plaintiffs had ample opportunity to review

and understand the MSA's terms. The MSA was "available on an external Salesforce website" (FAC ¶33) and explicitly addresses implementation services through both Salesforce and third-party providers. FAC, Ex. A ¶¶4.1-4.2. The Order Form specifically states that "Professional Services is recommended for optimal implementation of Journey Builder." FAC, Ex. A. Most tellingly, the termination provisions that Plaintiffs challenge appear under clear headings like "TERM AND TERMINATION." FAC, Ex. A ¶11. Such clearly disclosed terms cannot support a claim of unfair surprise. *Morris*, 128 Cal. App. 4th at 1321.

### 2.    Plaintiffs Also Fail to Allege Substantive Unconscionability

Substantive unconscionability requires contract terms "so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." *Morris*, 128 Cal. App. 4th at 1322. The FAC's allegations do not approach this demanding standard. The implementation cost provisions simply reflect the reality of enterprise software deployment, and the FAC offers no allegation that such costs are outside industry norms. The termination provisions apply equally to both parties and reflect Salesforce's legitimate interest in recovering its upfront costs and ongoing obligations to maintain services throughout the contract term.

### 3.    The Commercial Context Defeats Any Unconscionability Claim

The sophisticated commercial context further undermines any unconscionability claim. The FAC establishes that Plaintiffs are business entities contracting for enterprise software (FAC ¶¶13-16) who had opportunity to review terms before signing (FAC ¶¶33, 37). The mere fact that certain terms are standardized or non-negotiable does not render them unconscionable, particularly in the enterprise software context where uniformity is essential for efficient operations. *See Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-21 (1981) (standardized contracts are not per se unconscionable and can serve useful purposes in appropriate commercial contexts); *see also Cal. Grocers Assn. v. Bank of America*, 22 Cal. App. 4th 205, 215 (1994) (standardization of agreement terms may be commercially necessary and not, by itself, oppressive). Courts are particularly reluctant to find unconscionability in commercial contracts between sophisticated parties. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988). Salesforce respectfully requests that the Court dismiss the unconscionability count of the FAC.

D.    <u>Plaintiffs Fail to State a Claim for False Advertising (Count 3)</u>

Plaintiffs' allegations relating to their False Advertising count fail to identify statements that are actionable under the law. A statement constitutes non-actionable puffery if it is a "generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 554-55 (N.D. Cal. 2019). To be actionable, a statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.* Whether a statement is puffery is a question of law properly decided on a motion to dismiss. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990).

1.    The Challenged Statements Are Classic Puffery

In *Ahern*, the court considered Apple's statements about its "clear and remarkably vivid" computer screens, which were of the "highest quality" and were "the most advanced, most brilliant desktop display[s]" ever. *Ahern*, 411 F. Supp. 3d at 555. The Court found that these statements constituted non-actionable puffery because they did not "say anything about specific characteristics or components" of the product. *Id.* (citing *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012)) (statements that a laptop delivers "ultra-reliable performance," "full power and performance," "versatile, reliable systems," and were "packed with power" and "delivers the power you need" were not actionable)); *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (statements that line of laptops has the "latest technology" and "outstanding quality, reliability, and performance" were not actionable). The court went on to find that statements that the screens were the "most advanced" and of the "highest quality" were "boasts, all-but-meaningless superlatives." *Ahern*, 411 F. Supp. 3d at 556; (quoting *Consumer Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003)). "[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013.

The FAC challenges Salesforce's marketing claims that its services "reduce costs," are "cost-effective," "quick and easy" to implement, and "extremely flexible." FAC ¶¶150-151. These vague

assertions of quality and efficiency are precisely the type of "boasts, all-but-meaningless superlatives" that courts routinely dismiss as puffery. *Ahern*, 411 F. Supp. 3d at 556. This principle applies with particular force in the enterprise software context, where sophisticated business customers understand such statements as promotional language rather than guarantees of specific performance metrics or outcomes. This is particularly true given that the MSA contains an integration clause explicitly disclaiming reliance on extra-contractual representations. *See One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1286-87 (D.C. Cir. 1988) (integration clause dims prospects of reasonable reliance on alleged misrepresentations).

Salesforce's alleged "false" or "misleading" statements (like the statements challenged in *Ahern*) are generalized sales talk, meant to promote the company's commercial offerings, and are clearly non-actionable puffery. *See Oestreicher v. Alienware Corp.,* 544 F. Supp.2d 964, 973 (N.D. Cal. 2008), aff'd 322 Fed.Appx. 48 (9th Cir. 2009) ("[G]eneralized and vague statements of product superiority such as 'superb, uncompromising quality'" and "'longer battery life' are ... all non-actionable puffery."); *Hodges v. Apple Inc*., 2013 WL 4393545, at *3 (N.D. Cal. Aug. 12, 2013) (concluding that Apple's statement that its product had "the world's most advanced notebook display .... is non-actionable puffery because it is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely" (internal alterations and quotation omitted)); *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (holding that "statements about dependability and superiority," including comments such as "unequaled tradition of quality production" or "unrivaled performance" are "too vague to be actionable"); *Cook*, 911 F.2d at 246 (statement that lamps were "far brighter than any lamp ever before offered for home movies" was puffery, citing *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965)).

Statements like "cost-effective" and "reduce costs" are promotional rhetoric that lack specific, measurable benchmarks, making them classic puffery. Courts routinely recognize such statements as aspirational marketing language, which reasonable consumers do not interpret as specific, enforceable promises. These are not factual representations that "a given standard is met" nor are they specific characteristics that are easily measurable, proved false or statements of

objective fact. *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361

(2003). They are, as phrased by the *Ahern* court, superlatives both meaningless and non-actionable

as a matter of law.[1]

Irrespective of context, vague assertions like "quick and easy," "extremely flexible," and

"very cost effective," cannot be false, or actionable, because they are too amorphous for the

reasonable reader to understand or justifiably rely upon. *In re 3Com Securities Litig.*, 761 F.Supp.

1411, 1419 (N.D. Cal. 1990); *Moyer v. Amador Valley J. Union High School Dist.*, 225 Cal. App.

3d 720, 725-26 (1990); *Paterno v. Sup. Ct.,* 163 Cal. App. 4th 1342 (2008).

        2.        The Context Confirms That These Statements Are Mere Puffery

The commercial context further demonstrates these statements are non-actionable puffery.

The statements appear in marketing materials (FAC ¶150), while the actual terms of service are

contained in the MSA and Order Forms (FAC ¶¶33-34). As sophisticated business entities capable

of evaluating software services (FAC ¶¶13-16), Plaintiffs conducted detailed evaluations before

contracting, including "approximately twenty (20) different meetings" in Net Retailers' case (FAC

---

[1] Courts have found the following statements to be non-actionable puffery: The word "premium" in the label phrase "Premium Baking Chips" is puffery and does not falsely imply that the white baking chips are made of white chocolate (*Cheslow v. Ghirardelli Chocolate Co.*, 445 F.Supp.3d 8, 18 (N.D. Cal 2020)); "[R]eliability," "durability," "superior fuel economy," "torque," "horsepower," and "emission performance" are all "mere sales puffery" (*In re General Motors LLC CP4 Fuel Pump Litig.*, 393 F.Supp.3d 871, 877-878 (N.D. Cal 2019)); "[P]roven quality and performance," "world's most popular," "trusted performance, reliability, simplicity, and capacity," "most sophisticated manufacturing process," "Your digital life safe and sound," and "always protected" (*In re Seagate Tech. LLC Litig.*, 233 F.Supp.3d 776, 793-794 (N.D. Cal 2017) - describing computer hard drive back-up system); "Quality," "reliability," and "performance" generally constitute puffery (*Glen Holly Entertainment, Inc. v. Tektronix Inc.,* 343 F3d 1000, 1005 (9th Cir. 2003); see also, *Summit Tech., Inc. v. High-Line Med. Instruments, Co.,* 933 F.Supp. 918, 931(C.D. Cal. 1996) - "The word 'reliable' is inherently vague and general—in common parlance akin to a statement that the machine is 'fine'"); "[F]aster," "more powerful," and "more innovative" than competing machines were "nonactionable puffery" (*Oestreicher,* 544 F. Supp. 2d at 973 - describing defendant's personal computers); "The Most Advanced Home Gaming System in the Universe" (*Atari Corp. v. 3DO Co.* 1994 WL 723601(N.D. Cal 1994) - describing computer gaming system); "[C]rystal clear digital video" and "CD-quality audio" (*Consumer Advocates*, 113 Cal. App. 4th at 1361 - describing defendant's digital TV signal); "[W]orldwide leader in automotive safety" (*In re Ford Motor Co. Sec. Litig., Class Action* 381 F3d 563, 570-571 (6th Cir. 2004) - describing automobile manufacturer's safety); "[T]he strictest safety standards possible" (*Greater Houston Transp. Co. v. Uber Techs., Inc.* 155 F. Supp.3d 670, 683 (S.D. Tex. 2015) - describing ride-sharing company's web statements).

1   (¶83). This sophistication and due diligence undermine any claim that they actually relied on vague

2   marketing statements. *See Elias*, 950 F. Supp. 2d at 1133 (commercial context relevant to puffery

3   analysis).  Because the challenged statements are non-actionable puffery as a matter of law, Count

4   3 should be dismissed. *See Cook*, 911 F.2d at 246 (affirming dismissal of claims based on puffery).

5             **3.**        **Plaintiffs Fail to Specifically Plead Averments to Fraud Under Their False**

6                     **Advertising Count**

7        "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with

8   particularity." *Semegen v. Weidner*, 780 F.2d 727, 734–35 (9th Cir.1985). Federal Rule of Civil

9   Procedure 9(b) provides that in alleging fraud or mistake, "a party must state with particularity the

10  circumstances constituting fraud or mistake." *Irving Firemen's Relief & Retirement Fund v. Uber*

11  *Technologies, Inc*., 998 F.3d 397, 403-04 (2021).

12       Rule 9(b)'s particularity requirement applies to state law causes of action relating to fraud

13  when asserted in federal court. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

14  "'[W]hile a federal court will examine state law to determine whether the elements of fraud have

15  been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of

16  the fraud must be stated with particularity is a federally imposed rule.'" *Vess*, 317 F.3d at 1103

17  (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)). Rule 9(b)'s heightened pleading

18  standards apply to violations of California Business & Professions Code § 17500 (false

19  advertisement). *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (2009).

20       A claim for false advertising under Section 17500 requires allegations of false statements,

21  misrepresentations, and deception. *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951(2002); *Chapman v.*

22  *Skype, Inc*., 220 Cal. App. 4th 217, 226 (2013); *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th

23  1255, 1275 (2006). A claim for false advertising is grounded and sounds in fraud as defined in *Vess*.

24  *Vess*, 317 F.3d at 1103-04. Accordingly, Plaintiffs' count for false advertising must satisfy the

25  particularity requirement of Rule 9(b). *Vess*, 317 F.3d at 1103-04. Plaintiffs' pleading, however,

26  falls well short of meeting that requirement.

27       Even if Plaintiffs could identify specific statements, they fail to allege reliance with the

28  specificity required under Rule 9(b). Their failure to specify which statements induced reliance or

1    how those statements caused harm is independently fatal to their claim under Rule 9(b). Courts

2    have consistently dismissed claims under Rule 9(b) for failure to allege specific reliance on

3    actionable statements. *See Kearns*, 567 F.3d at 1125-26. Indeed, therein lies the fundamental flaw

4    in the pleading of these claims grounded in fraud as a class action. Claims for fraud and deceit are

5    inherently individualized because a showing of fraud is dependent on Plaintiffs proving detrimental

6    reliance on the representations of Defendant. *Engalla v. Permanente Medical Group, Inc.*, 15

7    Cal.4th 951, 974 (1997).

8       **E.    Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good**

9       **Faith and Fair Dealing (Count 4)**

10       Plaintiffs' allegations that Salesforce breached the implied covenant of good faith and fair

11    dealing should also be dismissed. "The covenant of good faith and fair dealing, implied by law in

12    every contract, exists merely to prevent one contracting party from unfairly frustrating the other

13    party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc.*, 24

14    Cal. 4th 317, 349-50 (2000). The implied covenant, however, "cannot impose substantive duties or

15    limits on the contracting parties beyond those incorporated in the specific terms of their agreement."

16    *Id.* at 350. "The covenant of good faith is read into contracts in order to protect the express covenants

17    or promises of the contract, not to protect some general public policy interest not directly tied to the

18    contract's purpose." *Foley*, 47 Cal. 3d at 690.

19       The FAC improperly attempts to impose additional obligations beyond the MSA's express

20    terms. Regarding implementation costs, the MSA explicitly addresses implementation services

21    (FAC, Ex. A ¶¶4.1-4.2) and discloses that implementation may be needed (FAC, Ex. A, Order

22    Form). Courts cannot use the implied covenant to add substantive obligations beyond those

23    reasonably contemplated by the express terms. *See Guz*, 24 Cal. 4th at 349-50; *Racine & Laramie,*

24    *Ltd. v. Department of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992).

25       Similarly, the MSA contains explicit termination provisions (FAC, Ex. A ¶11) specifying

26    when early termination is permitted (FAC, Ex. A ¶11.3). The implied covenant cannot create

27    termination rights not found in the contract. *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th

28    798, 808 (1995) ("courts are not at liberty to imply a covenant directly at odds with a contract's

1  express grant of discretionary power except in those relatively rare instances when reading the

2  provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory

3  agreement").

4          In any event, the FAC fails to allege bad faith conduct beyond Salesforce's enforcement of

5  express contract rights. Courts consistently hold that exercising contract rights does not breach the

6  implied covenant. *See Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2

7  Cal. 4th 342, 374 (1992). The FAC fails to allege any conduct by Salesforce that exceeded or

8  deviated from its express contractual rights, undermining any claim of bad faith. The FAC alleges

9  only that Salesforce enforced termination provisions, required payment of contracted amounts, and

10  maintained services as required. FAC ¶¶45-46, 52, 68-69. These actions merely implement express

11  MSA terms.

12          **F.          Plaintiffs Fail to State a Claim for Rescission (Count 5)**

13          Count 6 of the FAC seeks rescission of the MSA under California Civil Code § 1689. This

14  claim fails because the FAC does not adequately allege any valid grounds for rescission.

15          Under California law, rescission requires establishing specific statutory grounds, including,

16  but not limited to: (1) consent obtained through mistake, fraud, or duress; (2) failure of

17  consideration; or (3) the contract is unlawful or enforcement would be against public interest. Cal.

18  Civ. Code § 1689(b)(1-5). Rescission is "a harsh remedy" that courts grant "only when the

19  circumstances clearly justify it." *Village Northridge Homeowners Assn. v. State Farm Fire &*

20  *Casualty Co.*, 50 Cal. 4th 913, 928 (2010). Plaintiffs' dissatisfaction with implementation costs or

21  contract terms explicitly disclosed does not meet the threshold for rescission. Rescission, moreover,

22  requires the ability to restore the parties to their original positions, which is particularly problematic

23  with services agreements. *See Vaughn v. Fey*, 47 Cal. App. 485, 488-89 (1920).

24          First, the FAC's allegations negate any claim of mistake or fraud regarding implementation

25  costs. The MSA explicitly references implementation requirements, and the Order Form discloses

26  that "Professional Services is recommended for optimal implementation." FAC, Ex. A. As

27  sophisticated businesses, Plaintiffs had both the capability and opportunity to investigate

28  implementation needs, with Net Retailers conducting twenty meetings with Salesforce before

contracting. FAC ¶83. These allegations preclude any claim of mistake, fraud, or duress. FAC ¶165.) Moreover, any averment to "fraud" as a basis for recission requires specificity in pleading, which as argued above, plaintiffs have failed to plead. *Semegen*, 780 F.2d at 734–35.

Second, the FAC fails to establish failure of consideration. Salesforce provided the contracted services by maintaining platform availability as required pursuant to the terms of the agreement. FAC ¶¶52-53. That Plaintiffs allegedly could not fully utilize the services due to implementation costs or other business challenges does not constitute failure of consideration, particularly where the MSA makes no guarantees about specific business outcomes. *See Koenig v. Warner Unified School District*, 41 Cal.App.5th 43, 59 (2019). The failure of consideration alleged must be material and go to the essence of the contract. *Conlin v. Osborn*, 161 Cal. 659, 664 (1911); *Wyler v.* Feuer 85 Cal. App. 3d 392, 403-04 (1978); *Crofoot Lumber, Inc. v. Thompson,* 163 Cal. App. 2d 324, 332-33 (1958). Here, no breach of contract has been alleged, and no material failure of consideration, either complete or partial, has been pleaded. Even if Plaintiffs could establish grounds for rescission, which they cannot, the remedy would be impracticable here given the nature of cloud-based software services already provided. California Civil Code § 1691(b) requires that a party seeking rescission "restore to the other party everything of value which he has received from him under the contract or offer to restore the same." Courts have consistently recognized this requirement of restoration as fundamental to rescission. *See Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal. App. 3d 169, 184 (1988) (discussing requirement that party seeking rescission must restore or offer to restore benefits received under the contract).

Third, Plaintiffs have failed to plead any facts in support of their conclusory allegations that the MSA was unlawful or against public interest such that rescission would be available to Plaintiffs. As stated above, Plaintiffs' claims that the MSA, or any provision thereof, is unlawful, whether as fraud, a penalty under Civil Code §1671 or unconscionable, fail as a matter of law. *See* Sections B through D, above. Plaintiffs allege no facts in support of their suggestion that rescission is proper under Section 1689 either because the MSA is unlawful or against public interest.  Because the FAC fails to allege valid grounds for the remedy of rescission, Count 6 should be dismissed.

19

Case No. 3:24-cv-01219-JD

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

## V.    <u>CONCLUSION</u>

2

For the foregoing reasons, Salesforce respectfully requests that the Court dismiss Plaintiffs'

3    First Amended Complaint in its entirety. Plaintiffs have already been given an opportunity to amend

4    but have failed to cure the fundamental deficiencies of their claims, demonstrating that further

5    amendment would be futile. Accordingly, dismissal with prejudice is warranted.

6

7    Dated:  January 8, 2025                                    Respectfully submitted,

8                                                                          **ZUBER LAWLER LLP**

9                                                                          J. RAZA LAWRENCE
                                                                             TOMAS A. ORTIZ
10                                                                        JEFFREY J. ZUBER

11

12                                                          By:          */s/ J. Raza Lawrence*

13                                                                       Attorneys for Defendant Salesforce, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT

3910-1008 / 4114159.1