JEFFREY J. ZUBER (SBN 220830)
  jzuber@zuberlawler.com
TOMAS A. ORTIZ (SBN 188873)
  tortiz@zuberlawler.com
J. RAZA LAWRENCE (SBN 233771)
  rlawrence@zuberlawler.com
**ZUBER LAWLER LLP**
350 S. Grand Avenue, 32nd Floor
Los Angeles, California 90071 USA
Telephone: +1 (213) 596-5620
Facsimile: +1 (213) 596-5621

Attorneys for Defendant Salesforce, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DR. LISBETH W. ROY, a Florida resident; SINGLETON SURGICAL INSTITUTE, LLC, a Georgia limited liability company; NET RETAILERS, LLC, an Illinois limited liability company; and MEDALLION FINANCIAL GROUP, a Maryland corporation, <br><br> Plaintiff, <br><br> v. <br><br> SALESFORCE, INC., a Delaware corporation and Does 1-5, <br><br> Defendants. | Case No. 3:24-cv-01219-JD <br><br> **DEFENDANT SALESFORCE, INC's REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)** <br><br> Judge: Hon. James Donato <br> Date: March 6, 2025 <br> Time: 10:00 a.m. <br> Crtrm.: 11 |

## I. INTRODUCTION

The Court provided Plaintiffs the opportunity to fix the defects in their First Amended Complaint ("FAC"). Plaintiffs failed. Instead of addressing the fatal flaws in the Complaint identified in Salesforce's prior motion, they added only conclusory allegations in the FAC that do nothing to overcome the legal barriers to their claims. Most tellingly, their opposition offers no explanation of how they could cure these defects if given yet another opportunity to amend. Dismissal with prejudice is warranted.

The opposition particularly fails to explain: (1) how Dr. Roy could have standing when she signed only as a representative; (2) how standard acceleration clauses could constitute unlawful penalties; (3) how sophisticated businesses could claim unfair surprise about terms available for review; or (4) how general marketing statements could constitute actionable misrepresentations.

Rather than addressing the legal defects in their claims, Plaintiffs resort to rhetorical flourishes about "predatory practices" while mischaracterizing both the law and the Master Subscription Agreement ("MSA"). But inflammatory rhetoric cannot overcome the clear legal principles that doom each of their claims, particularly in this commercial context where all Plaintiffs are business entities that had ample opportunity to review terms before contracting.

Plaintiffs' own allegations confirm they are sophisticated business entities that had every opportunity to review the MSA's terms, evaluate implementation requirements, and make informed business decisions. Their attempt to recast standard commercial terms as "predatory practices" ignores both the business-to-business context and the clear legal principles that govern such transactions.

## II. PLAINTIFFS FAILED TO CURE FUNDAMENTAL PLEADING DEFICIENCIES

### A. Plaintiffs Had Clear Notice but Failed to Address Standing Defects

Salesforce's prior motion put Plaintiffs on clear notice that Dr. Roy lacks standing to bring individual claims based on a contract she signed only in her representative capacity. Instead of curing this defect, the FAC presents contradictory allegations. It attempts to characterize Doctor's Studio as merely a "fictitious business name" while simultaneously acknowledging that Dr. Roy held herself out as its CEO and signed the contract documents as a "C-Level Executive." This

attempted sleight of hand cannot overcome the fundamental principle that corporate officers lack standing to assert individual claims based on corporate contracts.

The Ninth Circuit's decision in *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir. 1979), is directly on point. There, the court held that even a corporation's president and sole shareholder lacked standing to assert individual claims based on the corporation's contracts. Dr. Roy's status as Doctor's Studio's sole owner does not change the legal reality —by contracting through a business entity and signing in a representative capacity, she cannot claim individual standing. Only the real party in interest—here, the business entity—may enforce its contractual rights. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) (corporation and its owners are distinct entities); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir. 1979) (holding that a corporation's president and sole shareholder lacked standing to assert individual claims based on corporate contracts).

Plaintiffs' reliance on Florida sole proprietorship law only highlights their misunderstanding of basic corporate principles. Even if Doctor's Studio was a "fictitious business name," Dr. Roy chose to sign in a representative capacity as CEO. She cannot retroactively rewrite that decision to create individual standing where none exists. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) (standing requires direct injury to the party asserting the claim); *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 229 (2005) (corporate officer cannot assert individual claims based on indirect harm from corporation's contracts).

The fact that Dr. Roy may have been Doctor's Studio's sole owner only highlights why she lacks individual standing—she chose to operate through a business entity rather than contracting personally. Having enjoyed the benefits of the corporate form, she cannot now disregard it to create standing. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003).

Having made the choice to contract in a representative capacity, Dr. Roy cannot now claim individual rights under those same contracts. This underscores why amendment here would be futile.

**B.    The FAC Fails to Properly Challenge the Termination Provision**

Despite being on notice that their "unlawful penalty" theory was legally deficient, Plaintiffs

made no meaningful attempt to distinguish the MSA's termination provision from the standard acceleration clauses that courts routinely uphold in commercial contracts. The FAC instead relies on conclusory allegations about "harshness" while invoking consumer protection cases that have no relevance to commercial contracts. This misapprehends the governing legal standard—courts uphold acceleration clauses in business agreements where they enforce previously agreed-upon obligations rather than imposing an unlawful penalty.

Plaintiffs' argument about implementation costs is particularly unavailing. The fundamental flaw in their penalty theory is that they conflate distinct concepts: the acceleration clause simply requires payment of amounts due on a subscription—it has nothing to do with implementation costs. Plaintiffs' attempt to conflate these distinct concepts only highlights the weakness of their penalty theory. Nothing about standard implementation requirements transforms this acceleration clause into an unlawful penalty.

The MSA's termination provision simply requires payment of amounts the customer has already agreed to on a subscription basis. As the court explained in *First Am. Commercial Bancorp v. Vantari Genetics*, 2020 WL 5027990, at *4 (C.D. Cal. Mar. 12, 2020), such provisions are valid and enforceable in commercial contracts because they serve legitimate business purposes—namely, ensuring predictable revenue streams, recovering costs, and avoiding prolonged collection efforts. The provision bears no resemblance to the unlawful penalties Plaintiffs cite from consumer cases.

Plaintiffs' reliance on *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir. 1985), is particularly misplaced. That case involved a minimum quantity requirement fundamentally different from an acceleration clause. More importantly, it was decided under Illinois law and conflicts with California authorities—Plaintiffs have agreed to California law under the MSA (FAC, Ex. B, ¶ 12.9)—upholding similar provisions. California courts have upheld contractual provisions requiring payment of amounts already agreed upon, as long as they do not impose additional penalties beyond the agreed terms. *See Garrett v. Coast & S. Fed. Sav. & Loan Assn.*, 9 Cal. 3d 731, 740 (1973) (holding that an increased interest rate upon default was not a penalty because the borrower owed only what he had contracted to pay, including the principal amount plus accrued interest)

3910-1008 / 4118107.1

3   Case No. 3:24-cv-01219-JD
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Plaintiffs' argument about implementation costs misses the mark entirely. The fundamental flaw in their penalty theory is that they conflate distinct concepts: the acceleration clause simply requires payment of contracted subscription amounts—it has nothing to do with implementation costs. Plaintiffs' attempt to conflate these distinct concepts only highlights the weakness of their penalty theory. Nothing about standard implementation requirements transforms this acceleration clause into an unlawful penalty.

The opposition's failure to explain how they could amend to overcome these authorities confirms that this defect cannot be cured.

### C. Plaintiffs' Own Allegations Defeat Their Unconscionability Claims

Plaintiffs' own allegations confirm why their unconscionability claims fail and why amendment would be futile. Courts apply a particularly high bar for unconscionability in commercial contracts, yet Plaintiffs rely on vague allegations of "surprise" that are not only insufficient but contradict their own pleadings.

Plaintiffs' own allegations about their pre-contract negotiations defeat any claim of unfair surprise. They admit having access to the MSA, acknowledge its reference to implementation services, and in Net Retailers' case, detail approximately twenty meetings with Salesforce. These sophisticated business entities had every opportunity to evaluate terms and requirements before contracting. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126-27 (2019) (opportunity to review terms weighs against procedural unconscionability).

Notably, while Plaintiffs complain about implementation costs, they identify no authority suggesting that standard industry implementation requirements could render an enterprise software agreement unconscionable. Such an unprecedented theory would effectively invalidate virtually every enterprise software contract in existence.

The FAC acknowledges that the MSA was "available on an external Salesforce website" before contracting. It admits the MSA explicitly references implementation services. In Net Retailers' case, it details "approximately twenty (20) different meetings" with Salesforce before contracting. These allegations affirmatively demonstrate there was no unfair surprise—Plaintiffs had ample opportunity to review and understand the terms but chose to proceed anyway.

1. The commercial context makes the unconscionability claim particularly implausible. These sophisticated business entities—including a medical practice, surgical training institute, online retailer, and financial services firm—had every opportunity to evaluate terms and requirements before contracting. Courts consistently reject unconscionability claims in business-to-business transactions absent extraordinary circumstances not alleged here. *See A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 489 (1982) (noting that unconscionability claims are viewed skeptically in commercial settings).

The distinction between consumer and commercial contracts is crucial here. Unlike adhesion contracts forced on individual consumers, these agreements are between sophisticated business entities operating in their areas of expertise. *See Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-21 (1981) (unconscionability claims viewed differently in commercial context); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) (sophisticated parties expected to protect own interests).

Plaintiffs' attempt to distinguish *A&M Produce* particularly fails. Unlike there, where key terms were hidden on the back of a form contract, here Plaintiffs admit the MSA was available for review and even acknowledge specific provisions about implementation services. Their sophisticated business status and admitted access to contract terms defeats any claim of unfair surprise. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005) (availability of terms for review before contracting defeats procedural unconscionability claim).

Even if the Court were to find some degree of procedural unconscionability based on the adhesive nature of the agreement—which it should not—Plaintiffs must still show substantial substantive unconscionability. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111,125-26 (2019). Their allegations that standard industry implementation requirements somehow render the agreement substantively unconscionable are unprecedented and would effectively invalidate enterprise software contracts as a category.

The opposition's failure to identify any additional facts that could be alleged to support unconscionability confirms amendment would be futile. The FAC's own allegations demonstrate a failure to plead both procedural and substantive conscionability as a matter of law.

### D. The Marketing Statements Remain Non-Actionable As A Matter of Law

Rather than identifying specific, actionable misrepresentations, the FAC relies on marketing statements like "quick and easy" and "extremely flexible," which courts consistently find non-actionable. *See Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245-46 (9th Cir. 1990); *Hodges v. Apple Inc.*, 2013 WL 4393545, at *3 (N.D. Cal. Aug. 12, 2013) (statements describing product as "most advanced" are non-actionable puffery because they are "generalized, vague and unspecified assertions"); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-40 (C.D. Cal. 2005) (claims about "latest technology" and "outstanding quality" are non-actionable puffery). Plaintiffs' characterization of general product descriptions as factual promises is particularly unconvincing given their status as sophisticated businesses. *See Anunziato*, 402 F. Supp. 2d at 1139 (statements about product capabilities constitute non-actionable puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp.2d 964, 973 (N.D. Cal. 2008) (same). The sophisticated business context further undermines any claim of reasonable reliance on such general marketing language. Recent decisions further confirm that such general product descriptions are not actionable. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 2688781, at *2 (N.D. Cal. June 5, 2018) (J. Donato) (statements about product features must be "specific" and "measurable" to be actionable); *Gonzalez Rodriguez v. Walmart Inc.*, No. 22-CV-2991 (JPO), 2023 WL 2664134, at *5 (S.D.N.Y. Mar. 28, 2023) (general product descriptions are not actionable absent specific, verifiable claims).

The MSA's integration clause, moreover, bars Plaintiffs' attempt to rely on marketing statements. The sophisticated commercial context makes this particularly significant—courts recognize that business entities understand the significance of integration clauses in defining the scope of their agreements. *See One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1286-87 (D.C. Cir. 1988) (integration clause defeats reasonable reliance on alleged pre-contract representations in commercial contracts).

The opposition's attempt to recharacterize these statements through citations to securities fraud cases demonstrates a fundamental misunderstanding of the distinction between puffery and actionable misrepresentation. Securities cases like *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d

784 (9th Cir. 2017) involve specific, verifiable statements about financial metrics and regulatory compliance - not general product descriptions. The statements here fall squarely within established categories of non-actionable puffery that no reasonable business customer would rely upon as factual claims.

The contrast with cases finding actionable misrepresentations is telling. Unlike representations about specific compliance requirements or quantifiable performance metrics, *see U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 WL 791462, at *7 (S.D.N.Y. Mar. 5, 2013) (finding specific policy features were misrepresented), the statements here are classic commercial promotion that no reasonable business customer would interpret as guarantees of specific performance metrics. *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) (statements like "crystal clear" and "CD quality" are non-actionable puffery).

Plaintiffs' attempt to rely on *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL 791462, at *7 (S.D.N.Y. Mar. 5, 2013), is equally unavailing. That case involved specific representations about insurance policy features that were directly contradicted by the policies themselves. Here, statements that software is "flexible" or "easy to use" are precisely the kind of subjective product praise that courts consistently find non-actionable. No amendment could transform these general marketing claims into specific, actionable misrepresentations.

Plaintiffs' attempt to rely on Salesforce's SEC filings is particularly misplaced. Those disclosures, which describe Salesforce's general business model and product offerings, only reinforce that the challenged statements are non-actionable commercial speech rather than specific guarantees about product performance.

The FAC's own allegations confirm why amendment would be futile. Plaintiffs acknowledge extensive pre-contract discussions, particularly in Net Retailers' case, and their sophisticated business background afforded them ample opportunity for due diligence. Their failure to identify any specific, verifiable misrepresentations—despite multiple pleading attempts—reinforces the futility of their false advertising claims. Instead, they rely on precisely the type of general product descriptions that courts consistently deem non-actionable, especially in sophisticated commercial transactions.

### E. The Implied Covenant and Rescission Claims Cannot Be Salvaged

Plaintiffs have failed entirely to address the fundamental legal defects in their implied covenant and rescission claims. The implied covenant claim still improperly seeks to add obligations beyond the express terms of the contract—something California law explicitly prohibits. *See Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374 (1992). The opposition offers no explanation of how this claim could be amended to avoid conflicting with express contractual terms.

Plaintiffs' theory that implied obligations regarding implementation costs should override express contract terms, moreover, fundamentally misunderstands California law. The implied covenant exists to protect a party's right to receive the benefits of the agreement actually made, not to alter the bargain by imposing additional obligations. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349-50 (2000). This is particularly true in sophisticated commercial transactions where parties are capable of protecting their own interests through negotiation. *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995).

Plaintiffs received exactly what they contracted for—a software license subject to the MSA's express terms. The implied covenant protects the express benefits of the contract—it does not create new ones. *See Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992). Their alleged dissatisfaction with implementation requirements cannot support an implied covenant claim where those requirements were disclosed and are standard in the industry.

The rescission claim suffers from even more fundamental defects. Plaintiffs acknowledge receiving services and transferring data to Salesforce's platforms, making restoration of the status quo impossible. They identify no legal basis for finding the contracts unlawful, and their own allegations establish the sophisticated commercial context that defeats their unconscionability theory. These are legal rather than factual defects that cannot be cured through amendment.

The rescission claim particularly fails because Plaintiffs cannot restore the status quo—they have already received and used Salesforce's services and platforms. *See Koenig v. Warner Unified School District*, 41 Cal.App.5th 43, 59 (2019) (rescission unavailable where complete restoration impossible). Their own allegations thus defeat any possibility of rescission.

### III. DISMISSAL WITH PREJUDICE IS WARRANTED

Plaintiffs' opposition not only fails to cure the FAC's fundamental defects—it underscores why amendment would be futile. Their own arguments confirm that these claims fail as a matter of law and cannot be salvaged through repleading.

The Court should dismiss the FAC with prejudice for several independent reasons. First, Plaintiffs have already had one opportunity to amend after seeing Salesforce's dismissal arguments. Their failure to cure the identified defects—or even explain how they could be cured—demonstrates the futility of further amendment. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

The commercial context of these transactions makes amendment particularly futile. All Plaintiffs are business entities that chose to contract for enterprise software. Their own allegations establish they had opportunities for due diligence that they chose not to exercise. No amount of creative pleading can transform their alleged buyer's remorse into viable legal claims.

More fundamentally, the FAC's defects are legal rather than factual. Standing cannot be created through creative pleading when contract documents show Dr. Roy signed only as a representative. The termination provision is a valid acceleration clause as a matter of law. The sophisticated commercial context defeats unconscionability. Marketing puffery remains non-actionable regardless of how it is characterized. The implied covenant cannot override express terms. And rescission is legally impossible given the nature of the services provided.

The opposition's rhetorical flourishes about "predatory practices" cannot overcome these fundamental legal defects. No amount of additional factual allegations could transform standard commercial terms into unlawful penalties, convert puffery into actionable misrepresentations, or create individual standing where none exists. The Court should not permit further amendment where Plaintiffs have failed to identify any potentially curative facts.

The opposition's complete failure to identify any amendments that could cure these defects is particularly telling. As the Ninth Circuit has consistently held, where plaintiffs fail to explain how they could cure deficiencies through amendment, dismissal with prejudice is appropriate. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008).

## IV. CONCLUSION

Because Plaintiffs have failed to state a claim and cannot cure their defects through amendment, the Court should dismiss the FAC with prejudice. The opposition confirms not only that Plaintiffs fail to state a claim, but that amendment would be futile. Their own allegations establish they had access to contract terms, engaged in due diligence, and made informed business decisions. No amount of creative pleading can overcome these fundamental barriers to relief.

Dated: February 20, 2025                                   Respectfully submitted,

                                            **ZUBER LAWLER LLP**
                                            J. RAZA LAWRENCE
                                            TOMAS A. ORTIZ
                                            JEFFREY J. ZUBER

By:   */s/ J. Raza Lawrence*
       Attorneys for Defendant Salesforce, Inc.