1
2
3
4
5
6
7

PILLSBURY WINTHROP SHAW PITTMAN LLP
Lee Brand (SBN 287110)
lee.brand@pillsburylaw.com
Dustin Chase-Woods (SBN 318628)
dustin.chasewoods@pillsburylaw.com
Natalie Truong (SBN 346680)
natalie.truong@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
Telephone:  415.983.1000
Facsimile:  415.983.1200

8
9

Attorneys for Defendant and Counter-Claimant
Salesforce, Inc.

10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

13
14
15
16

DR. LISBETH W. ROY, a Florida resident;
SINGLETON SURGICAL INSTITUTE, LLC,
a Georgia limited liability company; NET
RETAILERS, LLC, an Illinois limited liability
company; and MEDALLION FINANCIAL
GROUP, a Maryland corporation,

17                              Plaintiff,

18          vs.

19      SALESFORCE, INC.,

20                              Defendant.

21      SALESFORCE, INC.,

22                              Counter-Claimant,

23          vs.

24      DR. LISBETH W. ROY, a Florida resident;
25      SINGLETON SURGICAL INSTITUTE, LLC,
        a Georgia limited liability company; NET
26      RETAILERS, LLC, an Illinois limited liability
        company; and MEDALLION FINANCIAL
27      GROUP, a Maryland corporation,

28                              Counter-Defendants.

Case No. 3:24-cv-01219-JD

**SALESFORCE, INC.'S ANSWER TO
FIRST AMENDED COMPLAINT AND
COUNTERCLAIMS**

DEMAND FOR JURY TRIAL

Defendant Salesforce, Inc. ("Salesforce") respectfully submits this Answer to the First Amended Complaint ("FAC") filed by Plaintiffs Dr. Lisbeth W. Roy, Singleton Surgical Institute, LLC, Net Retailers, LLC, and Medallion Financial Group (collectively, "Plaintiffs"). Salesforce denies each and every allegation in the FAC except as specifically admitted herein.

Salesforce responds to each numbered paragraph of the FAC as follows:

1.    Salesforce denies the allegations in Paragraph 1 of the FAC.

2.    Salesforce denies the allegations in Paragraph 2 of the FAC.

3.    Salesforce denies the allegations in Paragraph 3 of the FAC.

4.    Salesforce denies the allegations in Paragraph 4 of the FAC.

5.    Salesforce denies the allegations in Paragraph 5 of the FAC.

6.    Salesforce denies the allegations in Paragraph 6 of the FAC.

7.    Salesforce denies the allegations in Paragraph 7 of the FAC.

8.    Salesforce denies the allegations in Paragraph 8 of the FAC.

9.    Salesforce denies the allegations in Paragraph 9 of the FAC.

10.    Paragraph 10 of the FAC purports to characterize the FAC, to which no response is required. To the extent anything in Paragraph 10 of the FAC requires a response, Salesforce denies the allegations in Paragraph 10 of the FAC.

11.    Paragraph 11 of the FAC purports to characterize the FAC, to which no response is required. To the extent anything in Paragraph 11 of the FAC requires a response, Salesforce denies the allegations in Paragraph 11 of the FAC.

12.    Paragraph 12 of the FAC asserts legal conclusions, to which no response is required. To the extent anything in Paragraph 12 of the FAC requires a response, Salesforce denies the allegations in Paragraph 12 of the FAC.

13.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the FAC and, on that basis, denies them.

14.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the FAC and, on that basis, denies them.

15.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the FAC and, on that basis, denies them.

16.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Paragraph 16 of the FAC and, on that basis, denies them.

17.     Salesforce admits the allegations in Paragraph 17 of the FAC.

18.     Salesforce admits and avers that it is publicly traded, that it provides customer relationship management ("CRM") services on a software-as-a-service ("SaaS") model, and that its fiscal year ending January 31, 2023, reflected revenue of approximately $31.352 billion.  Salesforce denies the remainder of the allegations in Paragraph 18 of the FAC.

19.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the FAC and, on that basis, denies them.

20.     Salesforce admits and avers that this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Salesforce denies the remainder of the allegations in Paragraph 20 of the FAC.

21.     Salesforce admits the allegations in Paragraph 21 of the FAC.

22.     Salesforce admits and avers that venue is proper in this Court.  Salesforce denies the remainder of the allegations in Paragraph 22 of the FAC.

23.     Salesforce admits and avers that it is a global leader in CRM technology, is a publicly traded company, and uses CRM as its ticker symbol.  Salesforce denies the remainder of the allegations in Paragraph 23 of the FAC.

24.     Salesforce denies the allegations in Paragraph 24 of the FAC.

25.     Salesforce denies the allegations in Paragraph 25 of the FAC.

26.     Salesforce denies the allegations in Paragraph 26 of the FAC.

27.     Salesforce denies the allegations in Paragraph 27 of the FAC.

28.     Salesforce denies the allegations in Paragraph 28 of the FAC.

29.     Salesforce denies the allegations in Paragraph 29 of the FAC.

30.     Paragraph 30 of the FAC purports to characterize the FAC, to which no response is required.  To the extent anything in Paragraph 30 of the FAC requires a response, Salesforce denies the allegations in Paragraph 30 of the FAC.

31.     Salesforce denies the allegations in Paragraph 31 of the FAC.

32.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the FAC and, on that basis, denies them.

33.     Salesforce admits and avers that customers sign Order Forms that incorporate by reference a Master Subscription Agreement ("MSA") available on Salesforce's website and that the MSA is available for review before contracting.  Salesforce denies the remainder of the allegations in Paragraph 33 of the FAC.

34.     Salesforce admits and avers that it drafted the MSA attached to the FAC as Exhibit B. Salesforce denies the remainder of the allegations in Paragraph 34 of the FAC.

35.     Salesforce denies the allegations in Paragraph 35 of the FAC.

36.     Salesforce admits and avers that Order Forms are presented for signature via DocuSign and that the Order Form attached to the FAC as Exhibit A states that it becomes legally binding upon signature and submission.  Salesforce denies the remainder of the allegations in Paragraph 36 of the FAC.

37.     Salesforce denies the allegations in Paragraph 37 of the FAC.

38.     Salesforce denies the allegations in Paragraph 38 of the FAC.

39.     Salesforce denies the allegations in Paragraph 39 of the FAC.

40.     Salesforce denies the allegations in Paragraph 40 of the FAC.

41.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the FAC regarding whether Plaintiffs had attorney representation. Salesforce denies the remainder of the allegations in Paragraph 41 of the FAC.

42.     Salesforce denies the allegations in Paragraph 42 of the FAC.

43.     Salesforce denies the allegations in Paragraph 43 of the FAC.

44.     Salesforce denies the allegations in Paragraph 44 of the FAC, and avers that § 5.1 of the MSA attached to the FAC as Exhibit B speaks for itself.

45.     Salesforce denies the allegations in Paragraph 45 of the FAC, and avers that § 5.4 of the MSA attached to the FAC as Exhibit B speaks for itself.

46.     Salesforce denies the allegations in Paragraph 46 of the FAC, and avers that § 5.3 of the MSA attached to the FAC as Exhibit B speaks for itself.

47.     Salesforce denies the allegations in Paragraph 47 of the FAC, and avers that §§ 5.1 and 5.4 of the MSA attached to the FAC as Exhibit B speak for themselves.

48.     Salesforce denies the allegations in Paragraph 48 of the FAC.

49.     Salesforce denies the allegations in Paragraph 49 of the FAC.

50.     Salesforce admits and avers that § 5.1 of the MSA attached to the FAC as Exhibit B states, in part: "Except as otherwise specified herein or in an Order Form, (i) fees are based on Services and Content subscriptions purchased and not actual usage[.]"  Salesforce denies the remainder of the allegations in Paragraph 50 of the FAC.

51.     Salesforce denies the allegations in Paragraph 51 of the FAC, and avers that § 3.2 of the MSA attached to the FAC as Exhibit B speaks for itself.

52.     Salesforce denies the allegations in Paragraph 52 of the FAC, and avers that § 2.1 of the MSA attached to the FAC as Exhibit B speaks for itself.

53.     Paragraph 53 of the FAC contains legal argument, to which no response is required. To the extent anything in Paragraph 53 of the FAC requires a response, Salesforce denies the allegations in Paragraph 53 of the FAC, and avers that § 8.2 of the MSA attached to the FAC as Exhibit B speaks for itself.

54.     Paragraph 54 of the FAC contains legal argument, to which no response is required. To the extent anything in Paragraph 54 of the FAC requires a response, Salesforce denies the allegations in Paragraph 54 of the FAC, and avers that § 10.2 of the MSA attached to the FAC as Exhibit B speaks for itself.

55.     Paragraph 55 of the FAC contains legal argument, to which no response is required. To the extent anything in Paragraph 55 of the FAC requires a response, Salesforce denies the allegations in Paragraph 55 of the FAC, and avers that § 10.1 of the MSA attached to the FAC as Exhibit B speaks for itself.

56.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the FAC and, on that basis, denies them.

57.     Salesforce admits and avers that, on or about December 23, 2019, Dr. Roy signed a certain Order Form incorporating by reference the then current MSA found on Salesforce's website. Salesforce further admits and avers that the annual cost set forth in the Order Form was approximately $10,000.  Salesforce denies the remainder of the allegations in Paragraph 57 of the FAC of the FAC.

58.     Salesforce denies the allegations in Paragraph 58 of the FAC, and avers that its public SEC filings speak for themselves.

59.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of allegations in footnote 2 to Paragraph 59 of the FAC and, on that basis, denies them.  Salesforce denies the remainder of the allegations in Paragraph 59 of the FAC.

60.     Salesforce denies the allegations in Paragraph 60 of the FAC.

61.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last two sentences of Paragraph 61 of the FAC, including footnote 3, and on that basis denies them.  Salesforce denies the remainder of the allegations in Paragraph 61 of the FAC.

62.     Salesforce denies the allegations in Paragraph 62 of the FAC.

63.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the FAC and, on that basis, denies them.

64.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the FAC and, on that basis, denies them.

65.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the FAC and, on that basis, denies them.

66.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the FAC and, on that basis, denies them.

67.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the FAC and, on that basis, denies them.

68.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the FAC and, on that basis, denies them.

69.     Salesforce denies the allegations in Paragraph 69 of the FAC.

70.     Salesforce admits and avers written communications with Plaintiffs' counsel on or about September 27, 2020, and further avers that those communications speak for themselves. Salesforce denies the remainder of the allegations in Paragraph 70 of the FAC.

71.     Salesforce admits and avers written communications with Plaintiffs' counsel on or about October 8, 2020, and further avers that those communications speak for themselves. Salesforce denies the remainder of the allegations in Paragraph 71 of the FAC.

72.     Salesforce admits and avers written communications with Plaintiffs' counsel on or about December 1, 2020, and further avers that those communications speak for themselves. Salesforce denies the remainder of the allegations in Paragraph 72 of the FAC.

73.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the FAC and, on that basis, denies them.

74.     Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the FAC and, on that basis, denies them.

75.     Salesforce admits the allegations in Paragraph 75 of the FAC.

76.     Salesforce admits and avers that Singleton Surgical Institute entered into an agreement with Salesforce at a cost of approximately $1,300-$1,500 per year.  Salesforce denies the remainder of the allegations in Paragraph 76 of the FAC.

77.     Salesforce denies the allegations in Paragraph 77 of the FAC.

78.     Salesforce denies the allegations in Paragraph 78 of the FAC.

79.     Salesforce denies the allegations in Paragraph 79 of the FAC.

80.     Salesforce denies the allegations in Paragraph 80 of the FAC.

81.     Salesforce admits and avers written communications with Singleton Surgical Institute on or about March 9, 2024, and further avers that those communications speak for themselves. Salesforce denies the remainder of the allegations in Paragraph 81 of the FAC.

82. Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the FAC and, on that basis, denies them.

83. Salesforce admits and avers that its representatives had extensive discussions with Net Retailers, including approximately twenty meetings. Salesforce denies the characterization of its marketing tactics as aggressive. Salesforce lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in Paragraph 83 of the FAC and, on that basis, denies them.

84. Salesforce admits and avers that its representatives made presentations to Net Retailers about Salesforce Commerce Cloud. Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 84 of the FAC and, on that basis, denies them.

85. Salesforce admits and avers that its representatives had extensive discussions with Net Retailers. Salesforce denies that it applied improper pressure on Net Retailers. Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 85 of the FAC and, on that basis, denies them.

86. Salesforce denies that Net Retailers was forced to rely on Salesforce, and that Salesforce made any misrepresentation to Net Retailers. Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 86 of the FAC and, on that basis, denies them.

87. Salesforce admits and avers that, on or about November 21, 2021, Net Retailers agreed to a five-year subscription term with Salesforce at a cost of approximately $1,800,000, and that the relevant Order Form was submitted via DocuSign. Salesforce denies the remainder of the allegations in Paragraph 87 of the FAC.

88. Salesforce denies the allegations in Paragraph 88 of the FAC.

89. Salesforce denies the allegations in Paragraph 89 of the FAC.

90. Salesforce denies the allegations in Paragraph 90 of the FAC.

91. Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 of the FAC and, on that basis, denies them.

1     92.    Salesforce denies the allegations in Paragraph 92 of the FAC.

2     93.    Salesforce admits and avers written communications with Net Retailers on or about

3 June 27, 2022, and further avers that such communications speak for themselves.  Salesforce denies

4 the remainder of the allegations in Paragraph 93 of the FAC.

5     94.    Salesforce admits and avers written communications with Net Retailers on or about

6 August 23, 2022, and September 1, 2022, and further avers that such communications speak for

7 themselves.  Salesforce denies the remainder of the allegations in Paragraph 94 of the FAC.

8     95.    Salesforce admits and avers written communications with Net Retailers on or about

9 September 15, 2022, and further avers that such communications speak for themselves.  Salesforce

10 denies the remainder of the allegations in Paragraph 95 of the FAC.

11     96.    Salesforce denies the allegations in Paragraph 96 of the FAC.

12     97.    Salesforce denies that Net Retailers experienced unreasonable performance issues

13 with Salesforce software.  Salesforce lacks knowledge or information sufficient to form a belief as to

14 the truth of the remainder of the allegations in Paragraph 97 of the FAC and, on that basis, denies

15 them.

16     98.    Salesforce admits and avers written communications with Net Retailers on or about

17 November 1, 2022, and November 30, 2022, and further avers that such communications speak for

18 themselves.  Salesforce denies the remainder of the allegations in Paragraph 98 of the FAC.

19     99.    Salesforce admits and avers written communications with Net Retailers on or about

20 January 16, 2023, and further avers that such communications speak for themselves.  Salesforce

21 denies the remainder of the allegations in Paragraph 99 of the FAC.

22     100.    Salesforce admits and avers written communications with Net Retailers on or about

23 February 22, 2023, and further avers that such communications speak for themselves.  Salesforce

24 denies the remainder of the allegations in Paragraph 100 of the FAC.

25     101.    Salesforce denies the allegations in Paragraph 101 of the FAC.

26     102.    Salesforce admits and avers written communications with Net Retailers on or about

27 March 16, 2023, and further avers that such communications speak for themselves.  Salesforce

28 denies the remainder of the allegations in Paragraph 102 of the FAC.

103.    Salesforce denies the allegations in Paragraph 103 of the FAC.

104.    Salesforce denies the allegations in Paragraph 104 of the FAC.

105.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the FAC and, on that basis, denies them.

106.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 of the FAC, and on that basis denies them.

107.    Salesforce denies the allegations in Paragraph 107 of the FAC.

108.    Salesforce admits that Net Retailers owes payment obligations of at least $1 million to Salesforce.  Salesforce denies the remainder of the allegations in Paragraph 108 of the FAC.

109.    Salesforce denies the allegations in Paragraph 109 of the FAC.

110.    Paragraph 110 of the FAC contains legal conclusions, to which no response is required.  To the extent anything in Paragraph 110 of the FAC requires a response, Salesforce denies the allegations in Paragraph 110 of the FAC.

111.    Salesforce admits and avers that Medallion Financial Group entered into an agreement with Salesforce at a cost of approximately $36,000 over three years.  Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 111 of the FAC and, on that basis, denies them.

112.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112 of the FAC and, on that basis, denies them.

113.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Medallion expressed interest in expanding its Salesforce platform and, on that basis, denies them.  Salesforce denies the remainder of the allegations in Paragraph 113 of the FAC.

114.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the FAC and, on that basis, denies them.

115.    Salesforce denies the allegations in Paragraph 115 of the FAC.

116.    Salesforce admits and avers that Medallion signed an Order Form via DocuSign.  Salesforce denies the remainder of the allegations in Paragraph 116 of the FAC.

1    117.    Salesforce denies that its agreement with Medallion was unviable. Salesforce lacks

2    knowledge or information sufficient to form a belief as to the truth of the remainder of the

3    allegations in Paragraph 117 of the FAC, and on that basis, denies them.

4    118.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of

5    the allegations in Paragraph 118 of the FAC, and on that basis, denies them.

6    119.    Salesforce denies the allegations in Paragraph 119 of the FAC.

7    120.    Salesforce denies the allegations in Paragraph 120 of the FAC.

8    121.    Salesforce denies the allegations in Paragraph 121 of the FAC.

9    122.    Paragraph 122 of the FAC asserts legal conclusions, to which no response is required.

10   To the extent anything in Paragraph 122 of the FAC requires a response, Salesforce denies the

11   allegations in Paragraph 122 of the FAC. Salesforce expressly denies that this case is appropriate for

12   class action treatment or that any Plaintiff has standing to represent any putative class of similarly

13   situated individuals.

14   123.    Salesforce denies the allegations in Paragraph 123 of the FAC.

15   124.    Salesforce denies the allegations in Paragraph 124 of the FAC.

16   125.    Salesforce denies the allegations in Paragraph 125 of the FAC.

17   126.    Salesforce denies the allegations in Paragraph 126 of the FAC.

18   127.    Salesforce denies the allegations in Paragraph 127 of the FAC.

19   128.    Salesforce denies the allegations in Paragraph 128 of the FAC.

20   129.    Salesforce denies the allegations in Paragraph 129 of the FAC.

21   130.    Salesforce denies the allegations in Paragraph 130 of the FAC.

22   131.    Salesforce denies the allegations in Paragraph 131 of the FAC.

23   132.    Salesforce incorporates by reference its responses to all preceding Paragraphs of the

24   FAC. Salesforce expressly denies that Count 1 states a valid claim for relief.

25   133.    Paragraph 133 of the FAC asserts legal conclusions, to which no response is required.

26   To the extent anything in Paragraph 133 of the FAC requires a response, Salesforce denies the

27   allegations in Paragraph 133 of the FAC.

28   134.    Salesforce denies the allegations in Paragraph 134 of the FAC.

1    135.    Salesforce denies the allegations in Paragraph 135 of the FAC.

2    136.    Salesforce denies the allegations in Paragraph 136 of the FAC.

3    137.    Salesforce denies the allegations in Paragraph 137 of the FAC.

4    138.    Salesforce incorporates by reference its responses to all preceding Paragraphs of the

5    FAC.  Salesforce expressly denies that Count 2 states a valid claim for relief.

6    139.    Salesforce denies the allegations in Paragraph 139 of the FAC.

7    140.    Salesforce denies the allegations in Paragraph 140 of the FAC.

8    141.    Salesforce denies the allegations in Paragraph 141 of the FAC.

9    142.    Salesforce denies the allegations in Paragraph 142 of the FAC.

10    143.    Salesforce denies the allegations in Paragraph 143 of the FAC.

11    144.    Salesforce denies the allegations in Paragraph 144 of the FAC.

12    145.    Salesforce denies the allegations in Paragraph 145 of the FAC.

13    146.    Salesforce denies the allegations in Paragraph 146 of the FAC.

14    147.    Salesforce denies the allegations in Paragraph 147 of the FAC.

15    148.    Salesforce denies the allegations in Paragraph 148 of the FAC.

16    149.    Salesforce incorporates by reference its responses to all preceding Paragraphs of the

17    FAC.  Salesforce expressly denies that Count 3 states a valid claim for relief.

18    150.    Salesforce denies the allegations in Paragraph 150 of the FAC.

19    151.    Salesforce denies the allegations in Paragraph 151 of the FAC.

20    152.    Salesforce lacks knowledge or information sufficient to form a belief as to the truth of

21    the allegations in Paragraph 152 of the FAC and, on that basis, denies them.

22    153.    Salesforce denies the allegations in Paragraph 153 of the FAC.

23    154.    Salesforce denies the allegations in Paragraph 154 of the FAC.

24    155.    Salesforce denies the allegations in Paragraph 155 of the FAC.

25    156.    Salesforce denies the allegations in Paragraph 156 of the FAC.

26    157.    Salesforce denies the allegations in Paragraph 157 of the FAC.

27    158.    Salesforce incorporates by reference its responses to all preceding Paragraphs of the

28    FAC.  Salesforce expressly denies that Count 4 states a valid claim for relief.

159.     Salesforce admits and avers that Plaintiffs, or certain of their affiliated entities, entered into one or more written agreements with Salesforce that incorporated by reference an MSA. Salesforce denies the remainder of the allegations in Paragraph 159 of the FAC.

160.     Salesforce denies the allegations in Paragraph 160 of the FAC.

161.     Salesforce denies the allegations in Paragraph 161 of the FAC.

162.     Salesforce denies the allegations in Paragraph 162 of the FAC.

163.     Salesforce denies the allegations in Paragraph 163 of the FAC.

164.     Salesforce incorporates by reference its responses to all preceding Paragraphs of the FAC.  Salesforce expressly denies that Count 6 states a valid claim for relief.  Salesforce further notes that Plaintiffs' FAC contains no Count 5 and proceeds directly from Count 4 to Count 6.

165.     Salesforce denies the allegations in Paragraph 165 of the FAC.

166.     Salesforce denies the allegations in Paragraph 166 of the FAC.

167.     Salesforce denies the allegations in Paragraph 167 of the FAC.

168.     Salesforce denies the allegations in Paragraph 168 of the FAC.

Salesforce denies that Plaintiffs and the putative class are entitled to any relief.  Salesforce respectfully requests that:

A.     the Court dismiss all the claims against it with prejudice;

B.     Plaintiffs take nothing by reason of the FAC;

C.     judgment be rendered in favor of Salesforce;

D.     Salesforce be awarded its costs of suit and attorneys' fees incurred in defense of this action; and

E.     the Court grant such other relief as the Court deems proper.

To the extent any allegation in the FAC is not expressly admitted above, it is denied.

## AFFIRMATIVE DEFENSES

Without admitting any burden of proof, Salesforce asserts the following affirmative defenses against each Plaintiff and the purported class as specified as to each affirmative defense.  Salesforce reserves the right to amend, supplement, or withdraw defenses and to assert additional defenses as appropriate.

1.    **Standing / Real Party in Interest (as to Plaintiff Dr. Roy).**  Dr. Roy executed the pertinent Order Form solely in her representative capacity as CEO and officer of Doctor's Studio, not in her individual capacity, and therefore lacks standing to assert individual claims under contracts entered into by Doctor's Studio.  Under established law, corporate officers who sign contracts solely in representative capacities cannot assert individual claims based on those corporate contracts.

2.    **Failure to Join Indispensable Parties (Fed. R. Civ. P. 12(b)(7)) (as to Plaintiff Dr. Roy).**  Salesforce incorporates herein by reference the allegations contained in the prior affirmative defense.  Dr. Roy's claims are barred, in whole or in part, by her failure to join Doctor's Studio, an indispensable party under Federal Rule of Civil Procedure 19.

3.    **Estoppel, Waiver, Laches, Unclean Hands, and Ratification (as to all Plaintiffs and the purported class).**  Plaintiffs and each member of the purported class knowingly accepted the benefits of the contracts after they were aware of the alleged facts now complained of, thereby waiving and/or ratifying any alleged misconduct.  Plaintiffs and each member of the purported class are also judicially estopped from asserting positions inconsistent with their conduct in accepting and using Salesforce's services, making payments under the agreements, and representing their sophistication and due diligence in business operations.  The claims of Plaintiffs and each member of the purported class are also barred by laches due to unreasonable delay in asserting such claims, and unclean hands due to their own breaches, misrepresentations, and attempts to avoid bargained-for obligations.

As to Plaintiff Dr. Roy: Doctor's Studio (and Dr. Roy, if she is able to bring claims on behalf of Doctor's Studio), a sophisticated business, knowingly signed the Order Form that expressly referenced and integrated the MSA.  Dr. Roy could not reasonably have believed that there was no contract associated with her purchase of a subscription other than the Order Form, not least because the reference to, incorporation of, and link to the MSA was on the Order Form, clearly printed in the same size and style font as all the other body text in the Order Form, and placed directly above the signature line such that no reasonable person—let alone a reasonable business—could claim to have reasonably missed it.  Dr. Roy knowingly accepted the terms of the MSA, which expressly

1    references implementation costs that Dr. Roy alleges she only found out about after the transaction

2    was complete.  Dr. Roy knowingly subscribed to Salesforce products and adopted the terms,

3    including the payment obligations, of the MSA, and is thereby estopped from claiming otherwise,

4    and has thereby waived, ratified, and/or unreasonably delayed in asserting any alleged misconduct.

5    On information and belief, Dr. Roy attempted to evade her business's payment obligations to

6    Salesforce by seeking a refund for fabricated reasons: namely, the reasons alleged in the FAC—

7    when the actual reason she wished to stop using (and paying for) her Salesforce subscription was due

8    to business reasons wholly unrelated to Salesforce.

9         As to Plaintiff Singleton Surgical Institute, LLC ("Surgical Institute"): Surgical Institute, a

10   sophisticated business, knowingly signed the Order Form that expressly referenced and integrated

11   the MSA.  Surgical Institute could not reasonably have believed that there was no contract associated

12   with its purchase of a subscription other than the Order Form, not least because the reference to,

13   incorporation of, and link to the MSA was on the Order Form, clearly printed in the same size and

14   style font as all the other body text in the Order Form, and placed directly above the signature line

15   such that no reasonable person—let alone a reasonable business—could claim to have reasonably

16   missed it.  Surgical Institute knowingly accepted the terms of the MSA, which expressly references

17   implementation costs that Surgical Institute alleges it only found out about after the transaction was

18   complete.  Surgical Institute knowingly subscribed to Salesforce products and adopted the terms,

19   including the payment obligations, of the MSA, and is thereby estopped from claiming otherwise,

20   and has thereby waived, ratified, and/or unreasonably delayed in asserting any alleged misconduct.

21        As to Plaintiff Net Retailers: Net Retailers, a sophisticated business, knowingly signed the

22   Order Form that expressly referenced and integrated the MSA.  Net Retailers admits that it is

23   sophisticated specifically in the area of CRM, as it developed its own CRM before doing extensive

24   research and shopping around for an alternative CRM, before deciding on Salesforce after weighing

25   the pros and cons of different options available on the market.  Net Retailers could not reasonably

26   have believed that there was no contract associated with its purchase of a subscription that cost

27   upwards of $1.8 million other than the Order Form, not least because the reference to, incorporation

28   of, and link to the MSA was on the Order Form, clearly printed in the same size and style font as all

the other body text in the Order Form, and placed directly above the signature line such that no reasonable person—let alone a reasonable business—could claim to have reasonably missed it.  Net Retailers admits that "the $1.8MM was a huge investment for Net Retailers," yet Net Retailers alleges that it neglected to read the Order Form or MSA that bound it to such a "huge" purchase. Net Retailers knowingly accepted the terms of the MSA, which expressly references implementation costs that Net Retailers alleges it only found out about after the transaction was complete.  Net Retailers used and benefited from Salesforce for months or years, as admitted in the FAC.  Net Retailers knowingly subscribed to Salesforce products and adopted the terms, including the payment obligations, of the MSA, and is thereby estopped from claiming otherwise, and has thereby waived, ratified, and/or unreasonably delayed in asserting any misconduct by signing, paying for, and using its unique Salesforce product to its benefit.

As to Plaintiff Medallion Financial Group ("Medallion"): Medallion, a sophisticated business, knowingly signed the Order Form that expressly referenced and integrated the MSA. Medallion could not reasonably have believed that there was no contract associated with its purchase of a subscription that cost approximately $36,000 other than the Order Form, not least because the reference to, incorporation of, and link to the MSA was on the Order Form, clearly printed in the same size and style font as all the other body text in the Order Form, and placed directly above the signature line such that no reasonable person—let alone a reasonable business—could claim to have reasonably missed it.  Medallion knowingly accepted the terms of the MSA, which expressly references implementation costs that Medallion claims it only found out about after the transaction was complete.  Medallion admits that it "grew to rely on Salesforce as its CRM, in part for its ability to integrate financial data," and thus used and benefited from the product.  Medallion admits that the benefit it derived from Salesforce was so great that it desired to expand its subscription to additional Salesforce products.  Medallion knowingly subscribed to multiple Salesforce products, and adopted the terms, including the payment obligations, of the MSA, and is thereby estopped from claiming otherwise, and has thereby waived, ratified, and/or unreasonably delayed in asserting any alleged misconduct, including by enjoying the benefits of its Salesforce subscriptions for years.

1   **4.    Statute of Limitations (as to all Plaintiffs and the purported class).**  Plaintiffs and

2   each member of the purported class cannot recover to the extent their claims are barred by applicable

3   statutes of limitations or repose.  Specifically, count 1 (Violation of Business & Professions Code §

4   17200 (CC 1671)) and count 2 (Violation of Business & Professions Code § 17200 (CC 1670.5)) are

5   barred by Business & Profession Code § 17208; count 3 (Violation of Business & Professions Code

6   § 17500 et seq.) is barred by Cal. Civ. Proc. § 338; count 4 (Breach of Covenant of Good Faith and

7   Fair Dealing) is barred by Cal. Civ. Proc. §§ 337, 339; and count 6 (Recission) is barred by Cal. Civ.

8   Proc. §§ 337, 339.

9   **5.    Comparative Fault / Third-Party Responsibility (as to all Plaintiffs and the

10  purported class).**  Plaintiffs' and each purported class member's alleged damages are barred to the

11  extent they were caused, in whole or in part, by Plaintiffs' and the purported class's own conduct or

12  by third parties over whom Salesforce had no control.

13  As to Plaintiffs, each Plaintiff is a sophisticated business that alleges that it made a

14  significant financial investment in Salesforce product(s) without first having read the Order Form or

15  MSA, which govern the terms of the agreement.  Plaintiffs' failure to read important agreements

16  before signing them constitutes negligence.  The reference to, incorporation of, and link to the MSA

17  was on the Order Form, clearly printed in the same size and style font as all the other body text in the

18  Order Form, and placed directly above the signature line such that no reasonable person—let alone a

19  reasonable business—could claim to have reasonably missed it.  No reasonable business could have

20  believed that there was no contract other than the Order Form associated with its purchase of a

21  subscription that cost thousands, tens of thousands, or over a million dollars.  All harm alleged in the

22  FAC, if indeed it was suffered, was caused by Plaintiffs' own negligent business practices.

23  **6.    Failure to Mitigate (as to all Plaintiffs and the purported class).**  Plaintiffs' and

24  each purported class member's claims are barred to the extent they failed to take reasonable steps to

25  mitigate any alleged damages, including failing to conduct adequate pre-contract due diligence

26  despite their sophisticated business status, failing to investigate implementation requirements during

27  pre-contract negotiations, failing to seek alternative solutions or negotiate contract modifications,

28

and failing to accept ongoing technical support and guidance offered by Salesforce to address implementation concerns.

7. **Contractual Disclaimer of Warranties (as to all Plaintiffs and the purported class).** Any express or implied warranties were disclaimed or limited by the MSA to the fullest extent permitted by law, including but not limited to the disclaimers in MSA sections 2.5, 2.6, 4.1, 8.2, and 8.3.

8. **Contractual Limitation of Liability (as to all Plaintiffs and the purported class).** Plaintiffs' and the purported class's claims for damages are limited or barred by the MSA's agreed limitation-of-liability provisions, including but not limited to MSA sections 10.1 (no liability in excess of the total amount paid by customer) and 10.2 (Exclusion of Consequential and Related Damages).

9. **Unjust Enrichment (as to all Plaintiffs and the purported class).** Plaintiffs and each member of the purported class would be unjustly enriched to the extent that they received restitution or disgorgement having obtained the benefits for which they paid. For example Plaintiff Medallion allegedly "grew to rely on Salesforce as its CRM," and derived so much value from it that Medallion sought to expand to additional Salesforce products.

10. **No Standing to Seek Injunctive Relief (as to all Plaintiffs and the purported class).** Plaintiffs and the purported class lack standing to seek injunctive relief because Plaintiffs and the purported class do not face any threat of future harm and thus would derive no benefit from the injunctive relief that they seek.

11. **Class Action Unsuitability (as to all Plaintiffs and the purported class).** Plaintiffs and the purported class cannot satisfy the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

The allegations of each of the four unique Plaintiffs demonstrate vastly different facts, circumstances, and legal issues that apply to each Plaintiff's case, demonstrating that the claims of every member of the purported class would be unique. For example, while Plaintiff Dr. Roy alleges to have derived no value from her Salesforce product, Plaintiff Medallion allegedly "grew to rely on Salesforce as its CRM," and derived so much value from it that Medallion sought to expand to

1   additional Salesforce products.  As admitted in the FAC, each Plaintiff signed contracts for different

2   products, at different costs, over different time periods, and came to evaluate and choose Salesforce

3   in different ways.  The FAC also demonstrates different levels of diligence among the Plaintiffs in

4   contracting with Salesforce, with Net Retailers having significant technical experience with CRMs,

5   having developed its own CRM, and heavily evaluating the market before choosing Salesforce over

6   other market alternatives; but alleging that, for example, Dr. Roy may have done less research before

7   choosing Salesforce.  Plaintiffs also seek to represent members of a purported class who, unlike

8   Plaintiffs themselves, presumptively read and understood the terms of the Order Form and MSA

9   before signing.

10          **12.     Offset / Setoff (as to all Plaintiffs and the purported class).**  Any recovery by

11  Plaintiffs and each member of the purported class must be offset by the value of services received,

12  and by Plaintiffs' and each purported class members' own liabilities to Salesforce.

13          **13.     Prior Dealings and Course of Performance (as to all Plaintiffs and the purported**

14  **class).**  Plaintiffs' and each member of the purported class's course of dealing and performance

15  under the MSA confirms the reasonableness and enforceability of the contract terms, including

16  Plaintiffs' and purported class members' acceptance of services under the agreement's terms for

17  extended periods.

18          **14.     No Right to Equitable Relief Where Adequate Remedy at Law Exists (as to all**

19  **Plaintiffs and the purported class).**  Plaintiffs' and each member of the purported class's claims for

20  injunctive and declaratory relief are barred because Plaintiffs member of the purported class have an

21  adequate remedy at law.  Equitable relief is unavailable where monetary damages provide a

22  complete and adequate remedy.

23          **15.     Failure to Allege or Satisfy Conditions Precedent (as to all Plaintiffs and the**

24  **purported class).**  Plaintiffs' and each member of the purported class's claims are barred to the

25  extent Plaintiffs and each purported class member failed to satisfy all conditions precedent to suit as

26  required by the MSA and Order Form, including rendering payments due, providing required notice

27  and opportunity to cure, and other contractual prerequisites.

28

**16.    Reservation of Additional Defenses.**  Salesforce reserves all defenses available under federal or state law that become apparent through discovery.

## COUNTERCLAIMS

Counter-Claimant Salesforce, Inc. ("Salesforce"), for its counterclaims against Dr. Lisbeth W. Roy, Singleton Surgical Institute, LLC, Net Retailers, LLC, and Medallion Financial Group (collectively, "Counter-Defendants"), alleges as follows:

## PARTIES

1.    Salesforce is a Delaware corporation with its principal place of business at 415 Mission Street, Third Floor, San Francisco, California 94105.

2.    Counter-Defendants are Dr. Lisbeth W. Roy (sued solely in connection with contracts entered into by Doctor's Studio),[1] Singleton Surgical Institute, LLC, Net Retailers, LLC, and Medallion Financial Group, each a Plaintiff in the FAC.

## JURISDICTION & VENUE

3.    This Court has subject matter jurisdiction over these counterclaims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and supplemental jurisdiction under 28 U.S.C. § 1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 and the forum selection clause in the parties' Master Subscription Agreements.

## FACTUAL BACKGROUND

5.    Salesforce is a leading provider of cloud-based customer relationship management ("CRM") software and related services.  Counter-Defendants, including Dr. Lisbeth W. Roy (in

---

[1] Dr. Roy executed an Order Form and Master Subscription Agreement solely in her representative capacity as CEO and "C-Level Executive" of Doctor's Studio, not in her individual capacity.  Under well-established California and federal law, corporate officers who sign contracts solely in representative capacities lack standing to assert individual claims based on those contracts.  *See Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 439-40 (9th Cir. 1979) (holding that corporation's president and sole shareholder lacked standing to assert individual claims based on corporate contracts).  Because Dr. Roy is not a contracting party in her individual capacity and lacks standing to assert individual claims, Salesforce's counterclaims are asserted against her solely to the extent she purports to represent interests related to Doctor's Studio's contracts or is its alter-ego. Salesforce will amend its pleadings if appropriate after an opportunity for discovery.

connection with Doctor's Studio), Singleton Surgical Institute, LLC, Net Retailers, LLC, and Medallion Financial Group, are sophisticated business entities that entered into written agreements with Salesforce for CRM subscription services.  These agreements include Master Subscription Agreements and separate Order Forms for each Counter-Defendant, which set forth the terms and conditions governing the parties' relationship, including payment obligations, term lengths, and remedies for breach.

6.      Under the terms of these agreements, Salesforce provided or made available its CRM software and related services to Counter-Defendants in exchange for payment of agreed-upon subscription fees.  Counter-Defendants accepted the benefits of Salesforce's services but failed to pay all amounts due under the agreements.  Despite repeated notices and demands, Plaintiffs did not cure their payment defaults, resulting in material breaches of the agreements and damages to Salesforce, including unpaid fees, late charges, and other losses.

**COUNTERCLAIM I**

**(Breach of Contract – As to Each Counter-Defendant Individually)**

7.      Salesforce incorporates by reference all preceding paragraphs of these Counterclaims as if fully stated here.

**A.      Breach of Contract – Net Retailers, LLC**

8.      Salesforce and Net Retailers, LLC entered into valid, enforceable written agreements, including but not limited to a Master Subscription Agreement and related Order Form (collectively, the "Net Retailers Agreements").  Under these agreements, Salesforce provided or made available CRM subscription services in exchange for payment of fees.

9.      Salesforce has fully performed or has been ready, willing, and able to perform all duties and obligations required under the Net Retailers Agreements.

10.      Net Retailers, LLC materially breached the Net Retailers Agreements by failing to pay amounts owed when due and by refusing to cure such payment defaults despite repeated notices and demands.

11.      As a direct and proximate result, Salesforce has suffered damages, including but not limited to unpaid fees, late charges, and other damages in an amount to be established at trial.

12.     Thus, Salesforce seeks judgment against Net Retailers, LLC for damages, plus interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**B.     Breach of Contract – Singleton Surgical Institute, LLC**

13.     Salesforce and Singleton Surgical Institute, LLC entered into valid, enforceable written agreements, including but not limited to a Master Subscription Agreement and related Order Form (collectively, the "Singleton Agreements").  Under these agreements, Salesforce provided or made available CRM subscription services in exchange for payment of fees.

14.     Salesforce has fully performed or has been ready, willing, and able to perform all duties and obligations required under the Singleton Agreements.

15.     Singleton Surgical Institute, LLC materially breached the Singleton Agreements by failing to pay amounts owed when due and by refusing to cure such payment defaults despite repeated notices and demands.

16.     As a direct and proximate result, Salesforce has suffered damages, including but not limited to unpaid fees, late charges, and other damages in an amount to be established at trial.

17.     Thus, Salesforce seeks judgment against Singleton Surgical Institute, LLC for damages, plus interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**C.     Breach of Contract – Medallion Financial Group**

18.     Salesforce and Medallion Financial Group entered into valid, enforceable written agreements, including but not limited to a Master Subscription Agreement and related Order Form (collectively, the "Medallion Agreements").  Under these agreements, Salesforce provided or made available CRM subscription services in exchange for payment of fees.

19.     Salesforce has fully performed or has been ready, willing, and able to perform all duties and obligations required under the Medallion Agreements.

20.     Medallion Financial Group materially breached the Medallion Agreements by failing to pay amounts owed when due and by refusing to cure such payment defaults despite repeated notices and demands.

21.    As a direct and proximate result, Salesforce has suffered damages, including but not limited to unpaid fees, late charges, and other damages in an amount to be established at trial.

22.    Thus, Salesforce seeks judgment against Medallion Financial Group for damages, plus interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**D.    Breach of Contract – Dr. Lisbeth W. Roy**

23.    Salesforce and Doctor's Studio, with Dr. Roy signing solely in her representative capacity as CEO, entered into valid, enforceable written agreements, including but not limited to a Master Subscription Agreement and related Order Form (collectively, the "Doctor's Studio Agreements").  Under these agreements, Salesforce provided or made available CRM subscription services in exchange for payment of an annual fee of approximately $10,000.

24.    Salesforce has fully performed or has been ready, willing, and able to perform all duties and obligations required under the Doctor's Studio Agreements.

25.    Dr. Roy (to the extent she purports to represent Doctor's Studio's interests or is determined to be its alter ego), materially breached the Doctor's Studio Agreements by failing to pay amounts owed when due and by refusing to cure such payment defaults despite repeated notices and demands.

26.    As a direct and proximate result, Salesforce has suffered damages, including but not limited to unpaid fees, late charges, and other damages in an amount to be established at trial.

27.    Thus, Salesforce seeks judgment against Dr. Lisbeth W. Roy (to the extent she purports to represent Doctor's Studio's interests or is determined to be its alter ego) for damages, plus interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Defendant and Counter-Claimant Salesforce respectfully requests that the Court:

A.    Dismiss the First Amended Complaint in its entirety, with prejudice, and enter judgment in favor of Salesforce and against Plaintiffs on all claims asserted by Plaintiffs;

B.    Enter judgment in favor of Salesforce on its breach of contract Counterclaims in an amount to be proven at trial;

C.    Declare that Dr. Roy lacks standing to assert individual claims under contracts entered into by Doctor's Studio in her representative capacity, or in the alternative that Dr. Roy is the alter-ego of Doctor's Studio and liable for its debts;

D.    Award Salesforce restitution or unjust enrichment in the alternative;

E.    Award Salesforce its attorney fees and costs of suit; and

F.    Award Salesforce such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Salesforce demands a trial by jury on all issues so triable.

Dated: July 14, 2025                    Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Lee Brand*
Lee Brand

Attorneys for Defendant and Counter-Claimant Salesforce, Inc.